PRODUCTOS CARNIC, S.A., a Nicaraguan Corporation, et al., Plaintiffs-Appellees,

v.

CENTRAL AMERICAN BEEF AND SEAFOOD TRADING COMPANY, a Florida Corporation, Defendant-Appellant,

v.

UNITED STATES COLD STORAGE, an Unincorporated Division of American Consumer Industries, a New York Corporation, Defendant-Appellee.

No. 79–3186
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 14, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Helliwell, Melrose & DeWolf, Robert J. Schaffer, Miami, Fla., for defendant-appellant.

Wright & Silverio, Mark V. Silverio, Miami, Fla., for Productos Carnic and E. Holmann.

Spear & Hoffman, Coral Gables, Fla., William D. Rogers, Charles H. Cochran, S. Mark Tuller, James A. Beat, Washington, D.C., for United States Cold Storage.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Insurrection, armed conflict, battles in the streets, terrorist attacks, riots, war, revolution, and the overthrow of a dictator permeate this appeal. General Anastasio Somoza was forced to resign as President of Nicaragua on July 17, 1979. The new government promptly nationalized a great portion of the vast holdings of Somoza and his family, including a small Nicaraguan meat processing company—already close to bankruptcy—Productos Carnic, S.A. (Carnic). During the two months before Somoza's downfall, Carnic exported approximately 862,000 pounds of frozen boneless meat to the United States. The meat was airlifted to neighboring San Salvador, where Central American Beef & Seafood Trading Co. (CABS) took possession, shipped the beef to Miami, and placed it into cold storage. The Nicaraguans, through the nationalized Carnic and its court-appointed receiver in bankruptcy, seek to recover the beef or its value from CABS. To do so, complex issues of commercial and international[1] law will have to be decided.

The District Court sought to preserve the *status quo* pending a full resolution of those issues by enjoining movement of the beef. CABS appeals the preliminary injunction.[2] With slight modification, we affirm.

*No Bones About It*

■ Our review of the District Court's preliminary injunction is limited to determining whether there was an abuse of discretion. *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979); *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979); *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). Those cases recognize, however, that the movant carries the burden of persuading the District Court that the four-part test for an injunction has been met: (1) the movant has a substantial likelihood of eventual success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs the damage which the injunction may cause the opponent; and (4) the injunction would not be adverse to the public interest.

*Appellant's Beef*

■ CABS principally argues that Carnic will not prevail on the merits. CABS claims it is a *bona fide* purchaser of the beef[3] and upon sale will owe the proceeds, less a set amount, to the Somozas as the pre-revolution owners who were not compensated when Nicaragua nationalized Carnic. It is true that confiscation is nor-

---

1. *See, e. g., United States v. Pink*, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942); *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021 (5th Cir. 1972); *Republic of Iraq v. First National City Bank*, 353 F.2d 47 (2d Cir. 1965), *cert. denied*, 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966).

2. We have jurisdiction pursuant to 28 U.S.C.A. § 1292(a)(1).

3. The beef was ostensibly sold on open account, the price to be determined by the market for resale of the beef.

mally contrary to our public policy and such acts by foreign governments will not be enforced against property within our jurisdiction. *Republic of Iraq v. First City National Bank, supra; Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.,* 392 F.2d 706 (5th Cir.), *cert. denied,* 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). But Carnic produced some evidence that General Somoza's ouster was actively supported by the United States and his holdings in Carnic and other companies were obtained by corrupt practices in violation of Nicaraguan law. Moreover, at this point of the litigation Somoza has not even submitted to the jurisdiction of the Court and is not a party.[4] CABS produced no evidence rebutting that produced by Carnic.

■ CABS also argues that the Uniform Commercial Code (U.C.C.) provides solely a damages remedy since this was a "shipment" contract, *see* Fla.Stat.Ann. § 672.319 (U.C.C. § 2–319), passing title to CABS at the time the beef left Nicaragua. The District Court correctly found that the original documents listed Carnic as a consignee with CABS, however. Nor does the U.C.C. limit Carnic's replevin count remedies to damages alone. Summers, *General Equitable Principles Under Section 1–103 of the Uniform Commercial Code,* 72 Nw.U.L.Rev. 906 (1978). Finally, even were Carnic's remedy limited to damages, an injunction may issue to protect that remedy. *Meis v. Sanitas Service Corp.,* 511 F.2d 655 (5th Cir. 1975); *Chacon v. Granata,* 515 F.2d 922 (5th Cir. 1975).

■ We find that Carnic met its burden of showing a substantial likelihood of success on the merits. This is especially so because the Somozas have not appeared to directly assert their interests.[5] And we certainly cannot say that Carnic has *no* likelihood of prevailing on the merits. As long as this factor is present to some degree, it is not even necessary that a *substantial* likelihood of success be shown. Where the other factors are strong, a showing of *some* likelihood of success on the merits will justify temporary injunctive relief. *Texas v. Seatrain International, S.A., supra,* 518 F.2d at 180; *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974). Carnic has doubtless shown *some* likelihood of prevailing and the other factors point strongly in favor of issuing the preliminary injunction.

*What's At Steak*

■ Adequate and essentially uncontradicted evidence supports the District Court's determination that without an injunction a meaningful decision on the merits would be impossible. *Compact Van Equipment Co. v. Leggett & Platt, Inc.,* 566 F.2d 952, 955 (5th Cir. 1978); *Canal Authority of State of Florida v. Callaway, supra,* 489 F.2d at 572. The District Court found that General Somoza controls CABS and "intends to transfer the subject beef and/or its proceeds out of the jurisdiction of this Court, with the result that any judgment ultimately obtained against CABS Trading would be unenforceable. . . ." The District Court's finding is supported by evidence that CABS once attempted to transfer the beef to a fictitious trading company, that CABS may have altered documents while the beef was in San Salvador, and that the Carnic bank account in Ft. Lauderdale, Florida, was closed and over $300,000 withdrawn at the instruction of General Somoza. By showing that CABS intended to frustrate any judgment on the merits, the Judge was entitled to conclude that Carnic undoubtedly had shown potential irreparable injury.

---

**4.** The District Court properly took judicial notice that Somoza left the United States, taking along substantial amounts of "his" assets.

**5.** At this point in the litigation, CABS disclaims any connection with and does not claim to represent the Somozas. Rather CABS claims to be a *bona fide* third-party purchaser of the Carnic beef, with only potential liability to the Somozas. The District Court found otherwise, *infra* at 686, but CABS still maintains its independence from the Somozas.

■ That threat of ineffective remedy also outweighs the damage which the injunction might cause CABS. As of September 1979, when the preliminary injunction issued, the record shows that the beef could remain in cold storage for up to two years without serious deterioration, though after six to eight months there might be very minor loss in value. Storage charges of $7,000 per month were being incurred by CABS, however.[6] The District Court did not abuse its discretion in finding that the possibility of losing jurisdiction over a product worth over one million dollars outweighed the storage charges plus very small loss in value of the beef at a relatively far-off date. The District Court furthermore attempted to have CABS sell the beef and deposit the proceeds into the registry of the Court pending a decision of the merits. CABS refused the suggestion without adequate explanation.

Finally, we find no abuse of discretion in the District Court's declaration that as of September 1979, the injunction was not adverse to the public interest.

### Ground For Modification

■ The time expended by this appeal[7] prompts us to direct a slight modification of the injunction. The District Court quite properly encouraged the parties to sell the beef and deposit the proceeds with the Court. The parties now indicate that the District Court renewed its encouragement during the pendency of this appeal. Why this obviously prudent course was rejected or not actively supported is beyond discernment. We think it best for reasons of judicial economy and common sense to direct a modification of the injunction at this time. The frozen beef may already have very slightly deteriorated. Thus the parties' rights may be slightly impaired should the beef remain unsold a great deal longer.

*Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 569 F.2d 300, 302 (5th Cir. 1978). Further, the public interest favors economic efficiency and the avoidance of useless expense. Holding the beef over a long period senselessly uses up storage space and charges of $7,000 per month. The coup de grâce of litigation caused by revolution usually comes *long* after that of the revolution. *E. g., Menendez v. Faber Co. & Gregg, Inc.,* 345 F.Supp. 527 (S.D.N.Y.1972), *aff'd, modified & remanded,* 485 F.2d 1355 (2d Cir. 1973), *rev'd sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) (Cuban revolution).

We therefore direct that the prudent course for the District Court is to require the sale of the beef and deposit of the proceeds in an interest-bearing account under direction of the District Court. The District Court is accorded full discretionary powers to order reasonable cooperation by the parties in the planning and handling of the sale in a manner, time and place that is commercially feasible and reasonable. The object is to get the best and highest price for the beef avoiding diminution in value or proceeds from a sale "under the hammer." The District Court should fashion a modification of the preliminary injunction to carry out these considerations.

AFFIRMED and MODIFIED.

---

6. The District Court required Carnic to post only a $5,000 bond. F.R.Civ.P. 65(c) gives the District Court broad discretion in setting the amount of the bond.

7. Briefing was not completed until April 8, 1980. The District Court's order was entered on September 14, 1979. Notice of appeal was filed on September 20 and the record was filed with this Court on October 1, 1979.