In re FREDEMAN LITIGATION.

DIXIE CARRIERS, INC., et al., Plaintiffs–Appellees,

v.

CHANNEL FUELING SERVICE, INC., et al., Defendants–Appellants.

No. 87–2994.

United States Court of Appeals, Fifth Circuit.

April 15, 1988.

Rehearing and Rehearing En Banc Denied May 11, 1988.

Alan S. Dale, Frank J. Gonynor, Eastham, Watson, Dale & Forney, Herbert T. Schwartz, Houston, Tex., for plaintiffs-appellees.

Ned Johnson, Gary M. Braugh, Benckenstein, Oxford, Radford & Johnson, Beaumont, Tex., for intervenor Dow Chemical Co., et al.

Maurice C. Hebert, Jr., Alan G. Brackett, New Orleans, La., for Alter Barge Lines.

Michael K. Clann, Lizbeth Caudle, Clann, Bell & Murphy, Houston, Tex., for Crowley Maritime Corp.

Ronald S. Liebman, Mitchell R. Berger, Jean V. MacHarg, Patton, Boggs & Blow, Washington, D.C., for defendants-appellants.

Before RUBIN, KING, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In these consolidated civil RICO actions for treble damages, the district court entered a preliminary injunction prohibiting the defendants from transferring or removing virtually any of their assets without the court's express approval and the plaintiffs' knowledge. The disposition of these assets was not an issue in the underlying lawsuit, but the district court premised the injunction on "its inherent power to protect—through equity—the future utility of a potential judgment for damages." Because the district court lacked power to enter such an injunction under general equitable principles, the RICO statute, or the plaintiffs' pendent state-law claims, we vacate the preliminary injunction.

## I.

The defendants in these consolidated cases are corporations, and their current or former officers, involved in different facets of the marine industry, including barge towing, shipbuilding and repair, and vessel refueling. The corporate defendants include Port Arthur Towing Company (PATCO) and its wholly-owned subsidiaries, Channel Fueling Service, Inc., and Fredeman Shipyard, Inc. The individual defendants include, among others, William F. Fredeman, Jr., and Henry F. Fredeman, II, brothers who controlled and managed the companies. Some of the plaintiffs and intervenors, current or former customers of the defendants in the shipbuilding and repair or refueling businesses, allege that over a period of several years the defendants systematically charged them for more fuel than was actually delivered. Others, competitors of the defendants in the towing business, allege antitrust violations.

Before the plaintiffs brought these civil actions, the United States had instituted criminal charges against the Fredeman brothers[1] under the Racketeer Influenced and Corrupt Organizations Act ("RICO")[2] and other statutes. Pursuant to the criminal provisions of RICO,[3] the government in April 1986 obtained a court order restraining the defendants from disposing of the bulk of their assets during the pendency of

---

1. *United States v. Henry F. Fredeman, II, et al.,* No. B–86–10–CR (E.D.Tex.) (Hon. Sam B. Hall, Jr.).

2. 18 U.S.C. § 1961–1968 (1982).

3. 18 U.S.C. § 1963.

the litigation. In those proceedings, which continued into May 1987, each defendant involved here was either dismissed by the court or acquitted by a hung jury on the RICO counts; however, three of the defendants pled guilty to non-RICO offenses based on different facts.

The first of these civil actions was brought in September 1986. In it and the other actions, the plaintiffs sought treble damages, attorney's fees, and costs under the civil provisions of RICO[4] and damages under federal antitrust and pendent state-law claims. Other customers and competitors of the defendant companies intervened seeking similar relief.

While the civil actions proceeded through pretrial stages, the restraining order that the government had obtained remained in effect. On May 4, 1987, however, this order was vacated with the government's consent. The next day, the plaintiffs in the civil actions obtained a temporary restraining order from the district court that effectively reinstated the freeze on virtually all of the defendants' assets. The defendants then moved to dissolve the TRO, and the plaintiffs sought a preliminary injunction of the same character as the TRO, basing their request on Federal Rule of Civil Procedure 65. In response, the district court held a hearing at which it took testimony from former officers and other employees of the defendant companies. The court also had before it allegations from the Fredeman brothers' sister, Syndalise Fredeman Crawford, who sought to intervene in the action, and a copy of guilty-plea agreements that the Fredeman brothers had signed in the criminal proceedings. Later, Judge Howell Cobb, who had presided at the hearing, recused himself, and the case was transferred to another district judge. 669 F.Supp. 150.

Based on the record adduced at the hearing, the district court entered a preliminary injunction on August 7, 1987, enjoining the defendants "from selling, assigning, encumbering, transferring, or removing from the jurisdiction of this court any of such ... defendants' interests in the [enumerat-

ed] assets without the express approval of this court, and without knowledge of such action being communicated to the plaintiffs." The assets subject to the order included all corporate stock, securities, cash investments, cash on hand in excess of $3,000, accounts at financial institutions, real property interests, receivables, partnership or other unincorporated venture interests, and promissory notes, and, as to the individual defendants, also any interests in trusts, retirement or profit-sharing plans, or life insurance policies.

The order also enjoined the defendant companies from "dispersing" any assets outside their "normal business and operating procedures" without the court's express permission and the plaintiffs' knowledge, and the individual defendants from transferring any assets "except as necessary to maintain the family property and family members in a customary fashion." The court further required the defendants to present it weekly with, among other things, listings of all cash disbursements and of all other disbursements that exceeded specified amounts, documents showing the nature of each business transaction, and financial statements. Finally, it required the defendants to "take the reasonable steps necessary to maintain all property in accordance with this preliminary injunction." The court conditioned entry of the injunction contingent on the plaintiffs' filing a $500,000 bond to secure damages to which the defendant might be entitled if the injunction proved unjustified.

The court also rendered findings of fact and conclusions of law. These recited that from 1968 to late 1985, through a variety of measures, defendants PATCO and its fuel supplying subsidiaries regularly charged the plaintiffs and other customers for more fuel and lubricating oil than was actually delivered. The court found that the companies and their officers had paid bonuses to employees based on the amount of fuel they had secretly withheld and had covered up these practices with various accounting devices and false invoices. Finally, the court found that the defendants

---

**4.** 18 U.S.C. § 1964(c).

had tried to secrete assets in the past and likely would continue to do so in the future. In so finding, the court credited the testimony of John H. Palmer, a former officer of PATCO and Channel Fueling, that the defendants "would do anything" to avoid paying a multimillion dollar judgment for treble damages.

Based on these findings, the court concluded that the plaintiffs had shown, "through uncontradicted evidence, a substantial likelihood of prevailing on the merits of the civil RICO claims that are common to their nine complaints" and that they faced "a real and immediate risk of irreparable harm should a preliminary injunction restraining certain transfers and liquidations of defendants' assets not issue." The court rejected the defendants' claim that the injunction would unduly burden them, noting that they had labored under similar restraints for 16 months and had described the alleged burdens in terms too general to enable the court to fashion a less stringent order. Finally, in response to the defendants' argument that RICO did not authorize or even precluded the injunction, the court held that it did not "need to divine powers and prohibitions in RICO's malleable text and legislative history," because the statutory provisions would not affect the court's "inherent power to protect—through equity—the future utility of a potential judgment for damages." At a later telephone conference with counsel, the district court reaffirmed that it had issued the injunction on the basis of its equitable powers, not RICO. The court later modified the injunction without altering its essentials.

## II.

To obtain a preliminary injunction, a plaintiff must show that (1) he has a substantial likelihood of prevailing on the merits, (2) he is likely to suffer irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm to the defendant from the injunction, and (4) granting the injunction will not disserve the public interest.[5]

■ We review the district court's ultimate decision to grant the preliminary injunction under an abuse of discretion standard.[6] Conclusions of law underlying the court's decision, however, are subject to independent review.[7] The defendants raise such a purely legal question—whether, even assuming that all of the district court's findings were correct and that the four traditional standards for issuance of a preliminary injunction were met, the district court had power to enter the injunction.[8]

The plaintiff relies primarily, as did the district court, on the court's "inherent" equitable power, arguing that RICO, a statute "intended to provide new [remedial] weapons of unprecedented scope,"[9] cannot be read to eliminate remedial powers that are standard and well-accepted, such as that of issuing a preliminary injunction freezing assets to ensure satisfaction of a potential judgment.

■ The plaintiffs, however, proceed from a faulty premise. The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment. The Supreme Court so held in *De Beers Consolidated Mines v. United States.*[10] In *De Beers*, a civil antitrust prosecution, the government

5. *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974) (*cited in Mississippi Power & Light v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir.1985)).

6. *Mississippi Power & Light,* 760 F.2d at 621.

7. *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 710 (5th Cir.1984); *see also Religious Technology Center v. Wollersheim,* 796 F.2d 1076, 1079 (9th Cir.1986), *cert. denied,*

— U.S. —, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987).

8. *See USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 98 (6th Cir.1982).

9. *Russello v. United States,* 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983).

10. 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

obtained a pretrial preliminary injunction freezing all the property the defendants held in the United States to secure payment of any fine for contempt that the court might impose should the defendants disobey a court order. The Supreme Court reversed, holding that this theory was far too broad and was not supported by statute or general equitable principles:

> To sustain the challenged order would create a precedent of sweeping effect.... Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.[11]

The Court expressly distinguished such an interlocutory injunction from orders issued (a) to preserve property that might be the subject of a final decree or (b) to enjoin conduct that might be enjoined under a final decree, either of which would be permissible because "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."[12] The injunction entered in *De Beers*, by contrast, "deal[t] with a matter lying wholly outside the issues in the suit" and covered "property which in no circumstances [could] be dealt with in any final injunction that [might] be entered."[13]

The principle stated in *De Beers* undermines the injunction entered here. The plaintiffs ask, as did the government in *De Beers*, that property of the defendants unrelated to the underlying claim be held, essentially in a receivership by the district court, to satisfy those claims. The plaintiffs seek only treble damages, and the district court based its injunction solely on the need to protect those damage claims. The plaintiffs do not ultimately seek return of any particular asset or fund that the interim injunction might secure or that has been used to violate the statute, nor do they seek to enjoin future illegal conduct. Finally, as in *De Beers*, the injunction deals with matters different from those in the underlying cause. The issues in the RICO actions are whether the defendants overcharged their fuel customers and committed illegal anticompetitive acts against their competitors, not whether the defendants secreted assets to escape judgment.

We recently reaffirmed the vitality of *De Beers* in *Federal Savings & Loan Insurance Corp. v. Dixon*,[14] upholding a preliminary injunction prohibiting the defendants from dissipating assets pending resolution of FSLIC's claims for equitable relief. We held, however, citing *De Beers*, that such an injunction is generally not permissible to secure a potential money damage judgment and that the injunction should be modified so as not to freeze assets not subject to equitable remedies.[15]

Likewise, in *IIT Community Development Corp. v. Barton*,[16] we relied on *De Beers* to invalidate an order to turn over certain property to the court, which had been issued in the course of garnishment proceedings designed to secure a potential judgment for damages in the underlying lawsuit. The plaintiff in that case, like the

---

11.  *Id.* at 222–23, 65 S.Ct. at 1135.

12.  *Id.* at 220, 65 S.Ct. at 1134; *see also Federal Savings & Loan Insur. Corp. v. Dixon*, 835 F.2d 554, 560 (5th Cir.1987); *USACO Coal Co.*, 689 F.2d at 97–98.

13.  *De Beers*, 325 U.S. at 220, 65 S.Ct. at 1134; contrast, e.g., *United States v. First National City Bank*, 379 U.S. 378, 385, 85 S.Ct. 528, 532, 13 L.Ed.2d 365 (1965).

14.  835 F.2d 554 (5th Cir.1987).

15.  *Id.* at 560, 565.

16.  569 F.2d 1351, 1358–61 (5th Cir.1978).

plaintiffs here, argued that the All Writs Act [17] and the district court's inherent powers authorized the turnover order. We held, however, that these sources of power would justify only an order essential to preserving the court's subject matter jurisdiction or processing the litigation to a complete resolution, and not an order designed simply to aid the plaintiff in enforcing any judgment he might obtain.[18]

That injunctions such as the one here cannot issue under Rule 65 does not leave plaintiffs generally unprotected from defendants' schemes to avoid judgments. This preliminary injunction, like the order in *Dixon*,[19] is in the nature of an attachment whose availability is governed by Federal Rule of Civil Procedure 64, the pertinent text of which is set forth in the footnote,[20] and through that rule by state law.

The remedy of attachment is, however, unavailable to the plaintiffs here. Under Texas law, attachment may issue only upon a certain and liquidated demand that is liquidated or whose amount is reasonably certain, unless the claim is against parties upon whom personal service cannot be made in Texas.[21] The defendants are available for personal service in Texas, and the plaintiffs' claims are entirely unliquidated and will remain so until the factfinder, at the conclusion of trial, ascertains their proper value.[22]

■ The plaintiffs do not distinguish *De Beers* or the cases following it, but contend primarily that the defendants are scoundrels who will try to escape judgment, an allegation that, even if true, would not justify the preliminary injunction. The district court argued that in *De Beers* and *IIT Community Development*, the courts had found the plaintiffs' ultimate chances of success "somewhat remote,"[23] while the plaintiffs here have a much stronger case.

In *De Beers*, however, the Supreme Court did not question the contention that the defendant would try to secrete its American assets;[24] the "remoteness" on which the Court focused, rather, was the lack of connection between the property frozen and the underlying lawsuit, and the number of contingencies that would have to occur before the government would need to execute on that property.[25] *De Beers*, *Dixon*, and *IIT Community Development* concern the threshold question whether the district court has power to enter an injunction even if the plaintiffs can satisfy the four traditional standards for obtaining such relief, including showing a sufficient probability of success on the merits.[26] In

17. 28 U.S.C. § 1651(a) (1982), which provides: The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

18. *IIT Community Development*, 569 F.2d at 1359–61 (*citing United States v. New York Telephone Co.*, 434 U.S. 159, 189, 98 S.Ct. 364, 381, 54 L.Ed.2d 376 (1977) (Stevens, J., dissenting).

19. 835 F.2d at 560; *compare De Beers*, 325 U.S. at 218, 65 S.Ct. at 133.

20. At the commencement of and during the course of an action, all remedies providing for seizure of ... property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) Any existing statute of the United States governs to the extent to which it is applicable.... The remedies thus available

include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

21. Tex.Civ.Prac. & Rem.Code § 61.005 (Vernon's 1987); *21 Turtle Creek Sq., Ltd. v. New York State Teach. Retirement Sys.*, 425 F.2d 1366, 1368–69 (5th Cir.1970) (citing Texas cases); *see also E.E. Maxwell Co. v. Arti Decor, Ltd.*, 638 F.Supp. 749, 751–53 (N.D.Tex.1986).

22. *21 Turtle Creek Sq.*, 425 F.2d at 1369.

23. *See IIT Community Development*, 569 F.2d at 1360 & n. 21.

24. *De Beers*, 325 U.S. at 215–16, 65 S.Ct. at 1132.

25. *Id.* at 222, 219, 65 S.Ct. at 1135, 1134.

26. *See Dixon*, 835 F.2d at 560; *see also USACO Coal Co.*, 689 F.2d at 98.

*IIT Community Development,* moreover, the fact that the district court had entered inadequate factual and legal conclusions to support the injunction was merely an alternative ground for reversal.[27]

The cases cited by the plaintiffs and the district court upholding preliminary injunctions freezing assets fall into categories none of which is applicable here. First, as the Court stated in *De Beers,* an injunction may issue to protect assets that are the subject of the dispute or to enjoin conduct that might be enjoined under a final order. In *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.,*[28] for example, on which the plaintiffs here rely heavily, we upheld an injunction against the transfer of a large shipment of frozen beef in a lawsuit alleging the beef had been misappropriated and seeking to recover the beef or its value. That injunction, limited to the property in dispute or its direct, traceable proceeds, is far different from the all-inclusive order entered here.

Although the *Productos Carnic* panel did say in passing that an injunction could have issued solely to protect a damage remedy,[29] this statement is dictum in view of the equitable nature of the case, and it cites neither *De Beers* nor *IIT Community Development.* It does not, therefore, persuade us that those cases have lost their force. Indeed, the authorities the panel cited to support its broad reference to damage remedies in fact involved equitable claims as well.[30]

The Sixth Circuit in a closely analogous case, *USACO Coal Co. v. Carbomin Energy, Inc.,*[31] has also recognized the distinction we draw. In upholding an injunction freezing the defendants' assets in a case alleging RICO violations and breaches of fiduciary duty, the court determined at the threshold that the injunction was within the district court's power, stating that the injunction had been issued not to secure a RICO treble damages award—in which case it would have been subject to *DeBeers* —but to protect the plaintiffs' right to restitution of particular funds that the defendants alleged had been misappropriated and were subject to a constructive trust.[32]

In a number of other cases, most of which the district court cited, this court and others have upheld preliminary injunctions to preserve the particular assets in dispute in actions that were essentially in rem. We have upheld injunctions against interference with efforts to salvage a sunken vessel whose ownership was in dispute,[33] and against disposition of property specified in a corporate merger contract property in a suit seeking recission of the contract and return of the property.[34] The District of Columbia Circuit, in an opinion on which the district court relied heavily, held that the plaintiffs, employees who claimed that their interests in a pension fund had been undervalued, could apply for a preliminary injunction restraining any disbursements from the fund as a measure to preserve their cause of action against the fund.[35] The Tenth Circuit has held that difficulty in collecting a damage judgment may constitute "irreparable injury" justifying a freeze on certain assets; but in that case, the disposition of the assets was the very harm against which the plaintiffs sought final relief,[36] a situation, as we have already noted, expressly envisioned in *De Beers.* In each of these cases, therefore, the assets frozen were in some way the subject of the litigation. The defendants'

**27.** 569 F.2d at 1361 n. 22.

**28.** 621 F.2d 683 (5th Cir.1980).

**29.** *Id.* at 686.

**30.** *See Meis v. Sanitas Service Corp.,* 511 F.2d 655 (5th Cir.1975); *Chacon v. Granata,* 515 F.2d 922 (5th Cir.1975).

**31.** 689 F.2d 94, 97 (6th Cir.1982).

**32.** *Id.*

**33.** *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 640 F.2d 560 (5th Cir.1981).

**34.** *Meis,* 511 F.2d at 656.

**35.** *Foltz v. U.S. News & World Report,* 760 F.2d 1300, 1308–09 (D.C.Cir.1985).

**36.** *Tri–State Generation v. Shoshone River Power, Inc.,* 805 F.2d 351, 354–56 (10th Cir.1986).

assets here, by contrast, are simply unrelated and, under *De Beers,* may not be drawn into the dispute solely to aid the plaintiffs in enforcing a potential money judgment.

In other cases upholding preliminary injunctions designed to freeze the status quo, the orders preserved specific assets when the defendant was about to become insolvent.[37] In *Deckert v. Independent Shares Corporation,*[38] for example, the defendant corporation was insolvent and the interlocutory order freezing certain assets held by a third party was "incidental" to the plaintiff's primary prayer for appointment of a receiver to manage and distribute all the assets of the corporation.[39] The Court noted that "[t]he injunction was framed narrowly to restrain only the transfer" of the trust assets.[40] The district court here, by contrast, froze essentially all of the defendants' assets, effectively putting the defendants into involuntary receivership, based on unproven claims for unliquidated damages.

## III.

◼ Congress, of course, has the power to authorize preliminary injunctions of this sort even though they would generally be unavailable under traditional equitable principles. We therefore address the question the district court did not: whether RICO authorizes injunctive relief of this sort for a private plaintiff in his civil action for treble damages. We conclude that it does not.

The Ninth Circuit, the only court of appeals to address this issue directly, has ruled in *Religious Technology Center v. Wollersheim*[41] that a private party may not obtain injunctive relief in a civil RICO action. Other courts of appeals in dicta have split over the issue,[42] as have the district courts,[43] although most commentators have argued that injunctive relief should be available.[44]

The civil remedies section of RICO, 18 U.S.C. § 1964, provides:

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enter-

---

**37.** *See, e.g., Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 52 (1st Cir.1986) (citing *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)).

**38.** 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940).

**39.** *Id.* at 285, 61 S.Ct. at 232.

**40.** *Id.* at 290, 61 S.Ct. at 234.

**41.** 796 F.2d 1076, 1080–89 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987).

**42.** *Contrast Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 489 n. 20 (2d Cir.1984), *rev'd on other grounds,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Trane Co. v. O'Connor Securities,* 718 F.2d 26, 28 (2d Cir.1983); *Dan River, Inc. v. Icahn,* 701 F.2d 278, 290 (4th Cir.1983) (injunctive relief unavailable), *with Bennett v. Berg,* 685 F.2d 1053, 1064 (8th Cir.1982) (injunctive relief possibly available), *aff'd on reh'g,* 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

**43.** *Contrast, e.g., Vietnam Veterans of America, Inc. v. Guerdon Indus.,* 644 F.Supp. 951, 959–60 (D.Del.1986); *Kaushal v. State Bank of India,* 556 F.Supp. 576, 581–84 (N.D.Ill.1983); *Ashland Oil v. Gleave,* 540 F.Supp. 81, 85–86 (W.D.N.Y. 1982); *Philatelic Foundation v. Kaplan,* No. 85 Civ. 8571 (S.D.N.Y.1986) [available on WESTLAW, 1986 WL 5629] (injunctive relief available), *with Aetna Casualty and Surety Co. v. Liebowitz,* 570 F.Supp. 908, 911 (E.D.N.Y.1983), *aff'd on other grounds,* 730 F.2d 905 (2d Cir. 1984); *Chambers Development Co. v. Browning–Ferris Industries,* 590 F.Supp. 1528, 1540–41 (W.D.Pa.1984) (injunctive relief available).

**44.** *See, e.g.,* Blakely, The RICO Civil Fraud Action in Context: Reflections on *Bennett v. Berg,* 58 Notre Dame L.Rev. 237, 230–41 (1982); Strafer, Massumi, and Skolnick, Civil RICO in the Public Interest: Everybody's Darling, 19 Amer. Crim.L.Rev. 655, 709–15 (1982); Belgard, Private Civil RICO Plaintiffs Are Entitled to Equitable Relief Under § 1964(a), 2 RICO L.Rep. 537 (1985); Note, The Availability of Equitable Relief in Civil Causes of Action in RICO, 59 Notre Dame L.Rev. 945 (1984).

prise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. In any action brought by the United States under this section, the court shall proceed as soon as practicable to the hearing and determination thereof. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Thus, while § 1964(b) expressly permits the government to seek equitable relief, § 1964(c), which concerns private plaintiffs, contains no such explicit grant.

As the Ninth Circuit stated in *Wollersheim*, this language and structure admit of conflicting plausible interpretations concerning the availability of private injunctive relief. One might read § 1964(a) to grant the district courts all-inclusive equitable powers and § 1964(b), authorizing equitable actions by the government, merely to set aside the traditional rule that only a victim may sue to enjoin a crime; [45] one might therefore conclude that private plaintiffs may seek injunctive relief under § 1964(a). On the other hand, one might

reason that, while § 1964(a) grants broad remedial powers, § 1964(b) alone defines who may invoke them—the government— for it provides simply that "[t]he Attorney General may institute proceedings under this section." [46] Section 1964(c), providing the treble damage remedy, then becomes a branch grafted onto the already-completed trunk of the statute. [47]

The *Wollersheim* court concluded, however, that the legislative history of § 1964 indicated that Congress did not view the section as extending injunctive remedies to private plaintiffs. During the House hearings on the Senate bill, S. 30, that was enacted as RICO, Representative Steiger proposed adding the private treble damages remedy and an explicit authorization for private injunctive actions. For unknown reasons, only the damage remedy survived. [48] Later, during the House floor debate, Rep. Steiger offered an amendment explicitly recognizing private injunctive suits under § 1964(a), a change the sponsor of S. 30 in the House, Representative Poff, described as providing "an additional civil remedy." At Rep. Poff's request, however, the injunctive relief provision was withdrawn so its ramifications could first be considered in committee. [49] Finally, the next term, the same amendment was offered in the Senate, accompanied by an explanation in testimony that it "would expand the available civil remedies" since "[n]ow only the United States can institute injunctive proceedings." [50] This bill passed the Senate but not the House and never became law. [51]

A recent Supreme Court decision, moreover, supports *Wollersheim*'s reliance on the fact that Rep. Steiger withdrew his

**45.** *In re Debs,* 158 U.S. 564, 582–84, 15 S.Ct. 900, 905–06, 39 L.Ed. 1092 (1895); *see Wollersheim,* 796 F.2d at 1083–84; Blakely, 58 Notre Dame L.Rev. at 331 & n. 212 (cited in note 44).

**46.** *See Kaushal,* 556 F.Supp. at 583.

**47.** *Id.*

**48.** *Wollersheim,* 796 F.2d at 1084–85.

**49.** *Id.* at 1085–86; *see* 116 Cong.Rec. at 35,346.

**50.** *See* S.16, 92nd Cong., 1st Sess. (1971); Victims of Crime, Hearings Before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 92d Cong., 1st. Sess. 3, 158 (1972) (statement of Richard Velde, Associate Administrator, Law Enforcement Assistance Administration); *see also Wollersheim,* 796 F.2d at 1086 (*quoting* S.Rep. No. 1070, 92d Cong., 2d Sess. 10 (1972); 118 Cong. Rec. 29, 370 (Sen. McClellan)).

**51.** *Wollersheim,* 796 F.2d at 1086.

proposal for a private injunctive remedy. The Court in *Agency Holding Corp. v. Malley–Duff & Associates*[52] refused to infer from the withdrawal of Rep. Steiger's proposal, which had also suggested a five-year statute of limitations on civil RICO actions, that Congress had rejected a uniform federal statute of limitations. The Court emphasized, rather, that the amendment had been withdrawn because it "had included yet another civil remedy, and Congressman Poff observed that 'prudence would dictate that the Judiciary Committee very carefully explore the potential consequences that this new remedy might have.' "[53] The Court also considered the bill that had been introduced but rejected the next term and concluded that its purpose had been to "broaden even further the remedies available under RICO," including permitting private actions for injunctive relief.[54] Although these statements do not represent the Supreme Court's full consideration of the matter, they indicate that the Court read the legislative history, including the Steiger/Poff exchange, as the Ninth Circuit had and would approve, we think, the reasoning employed in *Wollersheim*.

In addition, as the *Wollersheim* court noted, recent Supreme Court decisions have tended to curtail sharply the situations in which courts will infer the existence of a private cause of action from a statute, and this narrowing approach applies to statutes in which Congress has expressly provided some remedies but remained silent on others.[55] In such cases, a court must be chary of inferring the remedy and should do so only when it finds strong indicia of legislative intent to create the remedy.[56] The

legislative history of civil RICO indicates, if anything, the opposite intent.

We find the analysis contained in the *Wollersheim* opinion persuasive. Congress indeed had several opportunities to give express authorization to private injunctive actions but chose not to do so, apparently because it hesitated in the face of the ramifications of that remedy.

The plaintiffs' chief argument is that RICO must be "liberally construed to effectuate its remedial purposes"[57] and to foreclose interim injunctive relief would frustrate those purposes by allowing defendants to secrete their assets before a judgment could be executed against them. The Supreme Court has emphasized that all of the Act's provisions, especially § 1964(c), should be read in a liberal spirit.[58] The "liberal construction" directive, however, neither compels nor authorizes us to disregard convincing evidence from the legislative history that Congress believed it had not approved private injunctive remedies and balked at doing so.

We need not decide, however, whether all forms of injunctive or other equitable relief are foreclosed to private plaintiffs under RICO. Nor need we consider the plaintiffs' argument that another provision of the statute expressly says that RICO does not supersede civil remedies existing under other sources of law.[59] The preliminary injunction issued here cannot stand on general equitable principles, and RICO did not empower the district court to enter it.

## IV.

The plaintiffs argue finally that their various pendent state-law claims will sup-

**52.** —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

**53.** *Id.* at ——, 107 S.Ct. at 2766 (quoting 116 Cong. Rec. at 35,346 (Rep. Poff)).

**54.** *Id.*

**55.** *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19–20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979); *see also, e.g., Touche Ross & Co. v. Redington,* 442 U.S. 560, 571–73, 99 S.Ct. 2479, 2487–88, 61 L.Ed.2d 82 (1979); *Blue Chip*

*Stamps v. Manor Drug Stores,* 421 U.S. 723, 734, 95 S.Ct. 1917, 1919, 44 L.Ed.2d 539 (1975); *compare Thompson v. Thompson,* —— U.S. ——, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).

**56.** *Middlesex County Sewerage Authority,* 453 U.S. at 14–15, 101 S.Ct. at 2623 (*citing Transamerica,* 444 U.S. at 19, 100 S.Ct. at 247).

**57.** Pub.L. 91–452, § 904(a), 84 Stat. 947 (1970); *see also Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286.

**58.** *Sedima,* 473 U.S. at 528, 105 S.Ct. at 3290.

**59.** Pub.L. 91–452 § 904(b), 84 Stat. 947.

port the preliminary injunction. The district court made no findings concerning the plaintiffs' likelihood of succeeding on these claims, as opposed to those predicated on RICO. In any event, as a matter of law, none of the state-law claims will support the injunction.

Tex.Bus. & Com.Code § 15.21(b), a provision of the Texas antitrust laws cited by the plaintiffs, gives "[a]ny person or governmental entity" the right to sue "to enjoin [an] unlawful practice [described elsewhere in the statute] temporarily or permanently," not to enjoin a person from disposing of any of his assets that might be used to satisfy a potential judgment for damages caused by his wrongful acts. Section 15.21(b) provides, in addition, that "[i]n any such suit, the court shall apply the same principles as those generally applied by courts of equity in suits for injunctive relief against threatened conduct that would cause injury to business or property." As we have already held, *De Beers* and cases following it state that, under general principles of equity, an injunction may not issue to preserve assets unrelated to the litigation solely to protect a potential judgment for damages.

The plaintiffs, finally, rely on provisions of the Texas Deceptive Trade Practices Act[60] that authorize preliminary injunctions in certain situations in actions brought under the Act. This injunction, however, as we have discussed, is by nature a sequestration of assets. That remedy is expressly provided in § 17.47(d) of the Act, concerning suits brought by the State of Texas, but not in § 17.50(b), which governs remedies for private parties. Like Congress in RICO, the Texas legislature extended this action to the government but not to private parties, and the Texas Supreme Court, like the U.S. Supreme Court, has directed that, with regard to the DTPA, "[w]hen the Legislature has carefully employed a term in one section of a

statute, and has excluded it in another, it should not be implied where excluded."[61]

Section 17.50(b) authorizes private plaintiffs to recover actual damages, (b)(1); an injunction against future statutory violations, (b)(2); rescissions of a contract and restitution, (b)(3); or other "proper" relief, (b)(4). The plaintiffs seek neither a prospective injunction nor rescission and restitution. This injunction, moreover, is not "proper" relief, for to qualify as such, it must satisfy traditional standards of equity,[62] and, as we have held, under *De Beers* and our cases it did not.

For these reasons, we VACATE the preliminary injunction.

---

**60.** Tex.Bus. & Com.Code § 17.41 *et seq.* (Vernon's 1987).

**61.** *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex. 1980).

**62.** *Parks v. U.S. Home Corporation,* 652 S.W.2d 479, 485 (Tex.Civ.App.1983).