United States Court of Appeals,

Fifth Circuit.

No. 92-1438.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Empire Savings and Loan Association, Plaintiff-Appellee,

v.

D.L. FAULKNER, et al., Defendants,

Nancy Jane Toler, Larkin Toler, and Tobin Toler, Defendants-Appellants,

Sarah Ruth Toler, Appellant.

May 25, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before JOHNSON, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC") moved for a preliminary injunction against Sarah Toler and the Toler children ("the Tolers"), pursuant to the asset-freeze provisions of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990 ("TRA"), 12 U.S.C.A. § 1821(d)(18)-(19) (West Supp.1993). The Tolers appeal the district court's order granting the injunction. Finding no error, we affirm.

**I**

This appeal arises out of the failure of the Empire Savings & Loan Association ("Empire"), a federally-insured savings and loan. The Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as Empire's receiver ("FSLIC/Receiver") for purposes of liquidation.

In 1985, FSLIC/Receiver brought suit against James Toler, D.L. Faulkner, and various other defendants, alleging that they had defrauded Empire through fraudulent real estate speculation schemes. Toler was a real estate promoter engaged in the purchase and sale of real estate and the development of condominium projects in the Dallas-Fort Worth area. The complaint alleged that Toler and Faulkner had engaged in a scheme to obtain loans for themselves, and for investors who would purchase property from them, through the use of false information and the bribery of Empire's

president, Spencer Blain. Many of these loans remain unpaid, and have caused huge losses to Empire. FSLIC/Receiver sought compensatory damages of at least $142 million, based upon Toler's alleged fraudulent conduct and racketeering activities.

In 1987, an 88-count indictment was filed against Toler, Faulkner, and others, alleging, *inter alia,* violations of the RICO statute and conspiracy to defraud five savings and loan institutions, including Empire.[1] In late 1991, the jury convicted Toler on most counts, including the RICO and conspiracy counts of the indictment. In January 1992, Toler was sentenced to twenty months imprisonment, and was also ordered to forfeit $38 million to the United States. Toler's sentence and forfeiture have been stayed pending an appeal.

Two months after Toler's sentencing, FDIC/Receiver[2] sought a preliminary injunction which would limit the Tolers' ability to transfer their assets, pending resolution of the civil action, pursuant to the asset-freeze provisions of the recently-enacted TRA.[3] In support of its motion, FDIC/Receiver argued that the dissipation of those assets which James Toler had transferred to his wife and children,[4] would leave it with no source of recovery from which to satisfy any judgment entered against James Toler. After conducting an evidentiary hearing, the district court granted FDIC/Receiver's motion for a preliminary injunction. *See* Record on Appeal, vol. 2, at 246 (citing 12 U.S.C.A. § 1821(d)(18)-

---

[1]In June 1988, the district court stayed proceedings in FSLIC/Receiver's civil suit because of the pendency of the criminal action against Toler.

[2]Following the passage of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), the FSLIC was abolished and the FDIC, in its capacity as receiver, was subsequently substituted for FSLIC as the plaintiff in FSLIC/Receiver's civil suit for damages.

[3]To prevent the dissipation of assets fraudulently obtained from federally insured financial institutions, the TRA, *inter alia,* altered the showing the FDIC must make to obtain a preliminary injunction. Congress stated that

> Rule 65 of Federal Rules of Civil Procedure shall apply with respect to any proceeding under paragraph (18) [authorizing courts to issue an asset freeze upon the FDIC's request] without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

12 U.S.C.A. § 1821(d)(19) (West Supp.1993).

[4]As early as 1983, James Toler had begun to transfer assets obtained from Empire to his wife and children. *See* Record on Appeal, vol. 4, at 76.

(19)). The court also granted limited discovery for the purpose of determining which of the Tolers' assets were acquired with funds fraudulently obtained from Empire.

On appeal, the Tolers argue that the district court erred in: (a) granting a preliminary injunction to protect a potential damages award; (b) applying retroactively the preliminary injunction provisions of the TRA to a pending lawsuit; and (c) freezing all of their assets, rather than just those obtained from James Toler's alleged fraudulent conduct.

## II

## A

The Tolers first argue that the district court erred in ordering an injunction to protect legal, rather than equitable relief. *See* Brief for Tolers at 22 (citing *FSLIC v. Dixon,* 835 F.2d 554, 560 (5th Cir.1987) ("As a general rule, such an injunction is not permissible to secure post-judgment legal relief in the form of damages. Such an injunction to secure future payment of possible money damages would be in the nature of a "prejudgment attachment' subject to Federal Rule of Civil Procedure 64 and through that rule to the strictures of state law."). We review this issue de novo, as it turns on an interpretation of law. *See In re Fredeman,* 843 F.2d 821, 824 (5th Cir.1988) ("Conclusions of law underlying the court's decision [to issue an injunction], ... are subject to independent review.").

The general rule limiting injunctions to those cases where an equitable, rather than legal remedy is sought to be protected, necessarily follows from the traditional equitable requirement that an applicant for an injunction show irreparable injury. Because the availability of a legal remedy often indicates that an applicant's injury is not irreparable, courts generally do not issue injunctions to protect legal remedies. *See Dixon,* 835 F.2d at 560 n. 1 (holding that an injunction to secure post-judgment legal relief *would* be proper where the applicant demonstrated irreparable injury); *cf. De Beers Consolidated Mines v. United States,* 325 U.S. 212, 222-23, 65 S.Ct. 1130, 1135, 89 L.Ed. 1566 (1945) ("No relief of this character [an injunction to secure post-judgment legal relief] has been thought justified in the long history of *equity* jurisprudence." (emphasis added)). Since the preliminary injunction provisions of the TRA remove the equitable requirement of irreparable injury,

we see no reason to apply to those provisions the corresponding equitable principle that an injunction may not issue to protect a legal remedy. *See Fredeman,* 843 F.2d at 828 ("Congress, of course, has the power to authorize preliminary injunctions even though they would be unavailable under traditional equitable principles.").

We find further support in the express language of the preliminary injunction provisions of the TRA, which does not make a distinction between the kind of relief sought for the purpose of issuing an asset freeze. *See* 12 U.S.C.A. § 1821(d)(18)-(19); *see also Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 184-85, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."). In addition, the TRA's legislative history speaks broadly of giving the FDIC the authority to request an asset freeze for the purpose of protecting the taxpayers' money, without regard to whether the FDIC seeks to protect a legal, rather than equitable remedy. *See* 136 Cong.Rec. E3686 (daily ed. Nov. 2, 1990) (statement of Rep. Schumer) ("Congress is granting such relief from the more rigorous requirements of Rule 65 because the Federal Deposit Insurance Corporation and the Resolution Trust Corporation are in the position of protecting the depository insurance fund, i.e., the taxpayers' money."). Accordingly, we find no error in the district court's application of the preliminary injunction provisions of the TRA for the purpose of securing a potential damage award.

**B**

The Tolers next argue that the district court erred in applying the preliminary injunction provisions of the TRA to a pending lawsuit filed five years before the TRA's effective date. *See* Brief for Tolers at 26-28. Citing *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Tolers argue that the preliminary injunction provisions of the TRA cannot be applied retroactively because of the absence of unequivocal Congressional intent to that effect. *See id.* at 208, 109 S.Ct. at 471 (holding that "congressional enactments ... will not be construed to have retroactive effect unless their language requires this result"). FDIC/Receiver contends that we should apply the apparently conflicting rule set down in *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), where the Supreme Court stated that "a court is

to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. We review this legal issue de novo. *See Fredeman,* 843 F.2d at 824.

Because the instant case does not involve a retroactive application of the preliminary injunction provisions of the TRA, we need not reconcile the Supreme Court's decisions in *Bradley* and *Georgetown.* To determine whether a statute's application in a particular situation is prospective or retroactive, we focus on the conduct which is implicated by the application of the statute. "[A] statute's application is usually deemed prospective when it implicates conduct occurring on or after the [statute's] effective date." *McAndrews v. Fleet Bank of Massachusetts,* 989 F.2d 13, 16 (1st Cir.1993) (citing *EPA v. New Orleans Pub. Serv., Inc.,* 826 F.2d 361, 365 (5th Cir.1987)). Conversely, a statute's application is considered retroactive when it alters the legal consequences of conduct occurring before the statute's effective date. *Georgetown,* 488 U.S. at 219, 109 S.Ct. at 477 (Scalia, J., concurring)[5]; *see* Black's Law Dictionary 1317 (6th ed. 1990) (defining retroactive laws as those laws which take away or impair vested rights acquired under existing laws, create new obligations, or impose a new duty regarding transactions or considerations already past); *see, e.g., Georgetown,* 488 U.S. at 207, 109 S.Ct. at 471 (involving the promulgation of cost-limit rules which would allow the government to recoup sums previously paid); *Bradley,* 416 U.S. at 710, 94 S.Ct. at 2015 (involving the application of a change in law regarding attorney's fees to services rendered prior to the statute's enactment). Here, the application of the preliminary injunction provisions of the TRA implicates future conduct, in the sense that the asset freeze applies only to future transfers of the Tolers' assets. *See* Record on Appeal, vol. 2, at 250 ("It is further ORDERED that [the Tolers] ... are hereby restrained and enjoined from, directly or indirectly, selling, assigning, dissipating, ... any of their property ... without the prior approval of the court or an authorized representative of the FDIC...."). Because the district court's injunction does not invalidate, limit, or otherwise apply to transfers of assets occurring before the TRA's effective date, *see id.,* the injunction does not alter the

---

[5]Justice Scalia further distinguished between "normal" retroactivity and "secondary" retroactivity, *see Georgetown,* 488 U.S. at 219, 109 S.Ct. at 477 (Scalia, J., concurring), but this distinction is not relevant to our facts.

consequences of past conduct. Moreover, applying the injunction provisions of the TRA does not take away or impair vested rights existing prior to the TRA's effective date, as those provisions merely relax the procedural showing the FDIC must make to obtain an asset freeze. *See* 12 U.S.C.A. § 1821(d)(18)-(19).

The Tolers maintain that the court's injunction relies upon a retroactive application of the TRA because the FDIC's motion for an injunction is based on James Toler's alleged fraud and subsequent transfers of assets to his family, conduct which occurred before the TRA's effective date. We disagree. "A statute does not operate retroactively simply because its application requires some reference to antecedent facts." *McAndrews,* 489 F.2d at 16 (citing *Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922)). "Even when the later-occurring circumstance depends upon the existence of a prior fact, that interdependence, without more, will not transform an otherwise prospective application into a retroactive one." *Id.* (citing *New York Cent. & Hudson River R.R. Co. v. United States (No. 2),* 212 U.S. 500, 505-06, 29 S.Ct. 309, 311, 53 L.Ed. 624 (1908) (holding that a statute prohibiting rebates could validly be applied to a rebate paid after the act's effective date with respect to property transported before the act's effective date)). Consequently, the district court's injunction—issued after the TRA's effective date and which limits only future transfers of assets—involved a prospective, rather than retroactive, application of the TRA, notwithstanding the fact that conduct supporting the issuance of the injunction occurred before the TRA's effective date. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 849-50, 110 S.Ct. 1570, 1583, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring) (stating that "cases ... involved prospective rather than retroactive application, because they sought injunctive relief ").

## C

Lastly, the Tolers argue that even if the preliminary injunction provisions of the TRA apply, the district court erred in applying those provisions. The record shows, and the Tolers generally do not dispute,[6] that the FDIC established—as to James Toler—the requirements for an injunction under

---

[6]The Tolers do argue that despite the clear language of § 1821(d)(18)-(19), FDIC/Receiver still had to show "some potential injury" prior to obtaining an asset freeze under the TRA. *See* Brief for Tolers at 28-30 (citing 136 Cong.Rec. E3686 (daily ed. Nov. 2, 1990) (statement of

12 U.S.C.A. § 1821(d)(18)-(19). The Tolers do argue that: (1) the district court lacked the jurisdiction to freeze Sarah Toler's assets since she was not a party to the underlying civil action;[7] and (2) the court's injunction is exceedingly broad. *See* Brief for Tolers at 28-44. We review these legal issues de novo. *See Waffenschmidt v. MacKay,* 763 F.2d 711, 717-18 (5th Cir.1985) (reviewing jurisdiction issue de novo), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986); *Dixon,* 835 F.2d at 563-66 (reviewing scope of injunction issue de novo).

Under Fed.R.Civ.P. 65(d), "[e]very order granting an injunction and every restraining order ... is binding only upon the parties to the action, ... and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." *See also Waffenschmidt,* 763 F.2d at 717 ("An injunction binds not only the parties subject thereto, but also nonparties who act with the enjoined party."). The district court found that Sarah Toler actively participated with James Toler in transferring assets fraudulently obtained from Empire.[8] *See* Record on Appeal, vol. 2, at 245, 250. We will not disturb this factual finding absent clear error. *See Waffenschmidt,* 763 F.2d at 723. Because the record supports this finding, *see* Record on Appeal, vol. 4, at 80-88, the district court did not err in exercising jurisdiction over Sarah Toler.

The Tolers also argue that the scope of the injunction is exceedingly broad, since it includes those assets not obtained through James Toler's alleged fraudulent activities. In *Dixon,* we upheld

---

Rep. Schumer) ("Congress still intends that the Corporation be required to make some showing of injury prior to obtaining relief."). FDIC/Receiver met this requirement by establishing that absent an asset freeze, there likely would be few if any assets remaining to satisfy a money judgment. *See RTC v. Cruce,* 972 F.2d 1195, 2000 (10th Cir.1992) (holding that difficulty in collecting a damages judgment may satisfy "potential injury" requirement). Contrary to the Tolers' suggestion, the potential injury in this case was not merely a "speculative possibilit[y]," as testimony in the record shows that James Toler transferred assets and income to his wife and children with the intention of placing them beyond the reach of potential creditors. *See* Record on Appeal, vol. 4, at 80-88. Therefore, FDIC/Receiver met all the statutory requirements for obtaining a preliminary injunction as to James Toler.

[7]The Toler children—Nancy Jane, Larkin, and Tobin Toler—were parties to the underlying civil suit, *see* Record on Appeal, vol. 1, at 2-3, and were therefore within the district court's jurisdiction. *See* Fed.R.Civ.P. 65(d) ("Every order granting an injunction ... is binding ... upon the parties to the action....").

[8]Sarah Toler does not dispute that she had actual notice of the injunction order, as she testified at the preliminary injunction hearing before the district court.

an injunction which froze all the assets of the parties bound by the injunction where the parties failed to cooperate in demonstrating which of their assets were not acquired legitimately. *See id.,* 835 F.2d at 566 ("Since, however, the defendants did not cooperate by demonstrating their net worths, since they offered little evidence to rebut the overwhelming case against them, and since a vital public interest was at stake, the district court was correct to assume that all the defendants' assets were subject to restitution."). Here, the Tolers refused to aid the district court in determining which of their assets were traceable to James Toler's alleged fraud. The district court concluded that "[i]t is unclear from the record what property now owned by the Toler Defendants was acquired with funds derived from Toler's alleged illegal activity." Record on Appeal, vol. 2, at 247. We therefore hold that the district court did not err in freezing all of the Tolers' assets, pending a determination through limited discovery of which assets are traceable to James Toler's alleged fraudulent activities.[9] *See* Record on Appeal, vol. 2, at 248 (order of district court) ("The entry of a preliminary injunction would maintain the *status quo* pending final determination of FDIC's claims and pending resolution of which property now owned by the Toler Defendants was acquired with funds fraudulently obtained from Empire.").

## III

For the foregoing reasons, we **AFFIRM.**

---

[9]Because the Tolers have not demonstrated which assets are traceable to James Toler's alleged fraud, they cannot prove an independent interest in their assets. Thus, we find misplaced their reliance upon *Parker v. Ryan,* 960 F.2d 543 (5th Cir.1992). *See id.* at 546 (citing *Waffenschmidt,* 763 F.2d at 718, for the proposition "that if a nonparty asserts an independent interest in the subject property and is not merely acting on behalf of the defendant, then Rule 65(d) does not authorize jurisdiction over the party").