J.C. COKER, III, and Martha Barnwell, Individually and as Conservator of Ida Lena Hearn Kimbrough, Plaintiffs,

Mississippi Wildlife Federation, Plaintiff–Intervenor,

v.

Col. Francis R. SKIDMORE, in his Official Capacity as District Engineer, Vicksburg District, U.S. Army Corps of Engineers; Ltg. Henry J. Hatch, in his Official Capacity as Chief of Engineers, Department of the Army; Robert W. Page, in his Official Capacity as Assistant Secretary of the Army, Civil Works; and Michael P.W. Stone, in his Official Capacity as Secretary of the Army, Defendants,

Board of Mississippi Levee Commissioners and Board of Levee Commissioners for the Yazoo–Mississippi Delta, Defendant–Intervenors.

Civ. A. No. W90–0040(B).

United States District Court, S.D. Mississippi, W.D.

Sept. 5, 1990.

Tim Waycaster, Jim Warren, Waycaster & Warren, Jackson, Miss., David B. McLaurin, Shutterworth Smith & Webb, Tupelo, Miss., for plaintiffs.

Charles S. Tindall, III, Lake Tindall Hunger & Thackston, Greenville, Miss., for Bd. of Miss. Levee Comm'n Bd. of Levee Comm'n for Yazoo.

John Whitten, Jr., Breland & Whitten, Sumner, Miss., Yazoo Delta Levee Bd.

Dan H. McDaniel, Heidelberg Woodliff, Jackson, Miss., for Miss. Wildlife Federation.

Daniel Lynn, Asst. U.S. Atty., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Complaint for Declaratory and Injunctive Relief filed by Plaintiffs in this matter. Having considered the arguments and evidence presented by the parties at a trial on the merits, the Court renders these findings of fact and conclusions of law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1975 the United States Army Corps of Engineers ("the Corps"), in compliance with the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), prepared an Environmental Impact Statement ("EIS") for the Yazoo River Basin Flood Control Project ("the Project"). The Project is divided into three major components: the Yazoo Backwater Area Project, the Big Sunflower River Basin Project, and the Yazoo Headwater Project ("the YHP").

On February 16, 1990, the Corps issued a public notice on Item 3A–2, which contemplates approximately 7.2 miles of channelization work and approximately 5 miles of levee construction on a portion of the Yazoo River in Leflore, Holmes, and Humphries Counties in Mississippi. Item 3A–2 is included in the YHP. The levee portion of Item 3A–2 would complete a system of levees approximately 150 miles long from the mouth of the Yazoo River upstream to that point. The Corps plans additional levees upstream of Item 3A–2.

On or about May 4, 1990, the Corps forwarded a draft Environmental Assessment ("EA") and a draft Finding of No Significant Impact ("FONSI") for Item 3A–2 to various state and federal agencies. Subsequently, Colonel Francis R. Skidmore, District Engineer of the Corps for the Vicksburg District, determined that the EA

for Item 3A–2 was unacceptable as to the channelization portion and ordered an EA for the levee portion alone.

On May 29, 1990, J.C. Coker and Martha Barnwell, private landowners whose property would be crossed by the proposed levee, filed with this Court their Complaint for Declaratory and Injunctive Relief, alleging that Item 3A–2 required an EIS and therefore that the planned project was in violation of NEPA. Plaintiffs seek the following relief:

(1) that Defendants be enjoined from proceeding with Item 3A–2;

(2) that the attempt by the Defendants to issue an EA on the levee portion of Item 3A–2 be declared unlawful and set aside;

(3) that the attempt by the Defendants to proceed with Item 3A–2 without preparing an EIS be declared unlawful and set aside;

(4) attorney's fees and costs; and

(5) other appropriate relief.

Plaintiffs also filed a Motion for Preliminary Injunction.

Before the scheduled hearing on Plaintiffs' Motion for Preliminary Injunction, the parties agreed to forego the hearing and instead to prepare for a trial on the merits to begin on July 26, 1990. The Court issued an Order allowing the Board of Mississippi Levee Commissioners and the Board of Levee Commissioners of the Yazoo–Mississippi Delta to intervene as Defendant–Intervenors and the Mississippi Wildlife Federation to intervene as a Plaintiff–Intervenor. The two levee boards are state agencies having flood protection duties over the areas which could be flooded if the Item 3A–2 levee is not constructed.

Before the trial was held, the Corps, having finalized an EA for the 3A–2 levee, also completed and finalized a FONSI for the levee. The Corps has stated its plans to prepare an EIS supplemental to the 1975 EIS covering not only the channelization portion of Item 3A–2, but also all other uncompleted portions of the Yazoo Headwater Project.

On July 26 and 27, 1990, a trial was held on the merits of Plaintiffs' Complaint. At the close of the trial, the Court took the matter under advisement for rendition of this opinion.

## II. CONCLUSIONS OF LAW

The instant suit has been brought under NEPA, which is designed to ensure (1) that a federal agency considers the potential environmental consequences of a proposed major project in advance of a final decision to proceed with the project, and (2) that all relevant information is available to the parties involved in the decision-making process and in the implementation of the project. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989). NEPA requires the preparation of an Environmental Impact Statement, or EIS, by an agency for any proposed "major Federal action[ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS is

a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

*Id.*

The Council on Environmental Quality ("CEQ") issues regulations governing compliance with NEPA by federal agencies. 40 C.F.R. § 1500.1 *et seq.* The CEQ regulations provide that in deciding whether to prepare an EIS a federal agency must initially determine whether the proposed action is one that either (1) normally requires the preparation of an EIS or (2) is categorically excluded. Section 1501.4(a). If the proposed action falls into neither category, the agency must prepare an Environmental Assessment, or EA, to determine whether there is a significant potential impact to the environment which would necessitate the preparation of an EIS. Section 1501.4(b). The CEQ regulations describe an EA as

a concise public document for which a Federal agency is responsible that serves to:

(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

(2) Aid an agency's compliance with the Act when no environmental impact statement is necessary.

(3) Facilitate preparation of a statement when one is necessary.

Section 1508.9(a). If a significant impact is indicated, an EIS must be prepared. If no significant impact is found, a Finding of No Significant Impact, or FONSI, is issued by the agency. Section 1508.13.

When a series of related actions are planned by an agency, the agency may choose one of two alternatives: (1) the preparation of a single programmatic EIS for the entire series of projects, or (2) divisionof the actions with preparation of a separate EIS, EA, or FONSI for each action.

Because some projects are too large to complete at one time and must be divided into parts, an agency can rely upon tiering. The CEQ regulations explain tiering as follows:

Agencies are encouraged to tier their environmental impact statements to eliminate repetitive discussions of the same issues and to focus on the actual issues ripe for decision at each level of environmental review (§ 1508.28). Whenever a broad environmental impact statement has been prepared (such as a program or policy statement) and a subsequent statement or environmental assessment is then prepared on an action included within the entire program or policy (such as a site specific action) the subsequent statement or environmental assessment need

only summarize the issues discussed in the broader statement and incorporate discussions from the broader statement by reference and shall concentrate on the issues specific to the subsequent action. The subsequent document shall state where the earlier document is available. Tiering may also be appropriate for different stages of actions.

Section 1502.20. The Corps argues that it is tiering the levee portion of Item 3A–2 onto the original 1975 programmatic EIS and that since the FONSI has been issued on the EA regarding the levee it has complied with NEPA and should be allowed to proceed with the 3A–2 levee.

■ A doctrine standing in contrast to tiering is that of segmentation. The CEQ regulations also require that proposed actions "which are related to each other closely enough to be, in effect, a single course of action" must be evaluated in a single programmatic EIS. Section 1502.4. Improper segmentation may occur when a series of related actions for which a programmatic EIS is necessary are separately considered so that the sponsoring agency may thereby increase the likelihood of environmental approval for the series of actions. One court explained the logic of, and motivations behind, improper segmentation as follows:

If the court adopted the rule advanced by defendants and considered the specific environmental impact of each segment of the project, much of the force of NEPA would be undercut. Almost every project can be divided into smaller parts, some of which might not have any appreciable effect on the environment. The court would be forced to take each project apart piece by piece, hole by hole and explosion by explosion. Work allowed to proceed because it does not have a specific environmental impact would increase the government's "stake" in the project and thereby influence the decision making process when it is time to reevaluate the project in light of the environmental considerations.

*People of Enewetak v. Laird,* 353 F.Supp. 811, 821 (D.Haw.1973).

■ Plaintiffs argue that the Corps is segmenting Item 3A–2 by splitting the levee from the channelization.[1] The Court finds that the separation of the Item 3A–2 levee from the Item 3A–2 channelization project is not improper segmentation. The fact that the Corps originally advertised the levee and the channelization as part of a single project does not mean that the Corps acted improperly in later separating the two parts of the project for purposes of tiering. Since both the levee and the channelization are parts of a larger project to which a programmatic EIS applies, both of these smaller projects are evaluated in relation to the overall project and not just in relation to each other, and there is no danger, as with segmentation, that the channelization will be pushed through because the levee has been approved. The Court further notes that the cases cited by Plaintiffs regarding improper segmentation are inapplicable because those cases concerned individual actions which were contemplated only as part of larger overall projects and which in effect *could not exist* apart from each other. In the instant case, the levee and the channelization are of course both part of the Project, but there is no evidence that Item 3A–2 itself is a contemplated action whose individual components, the levee and the channelization, could not exist apart from each other, nor is there any evidence that the channelization must be completed, or will be completed, once the levee is constructed. Thus, if the Corps has a valid EIS, it may rely on tiering.

■ The Corps has placed itself in an awkward, if not untenable, position. Col. Skidmore testified that he could not issue a FONSI on the channelization portion of Item 3A–2. He further testified that the 1975 EIS for the Project was outdated and that he had ordered a supplemental EIS for the entire unfinished portion of the Project, except for the Item 3A–2 levee. He ordered this supplemental EIS because studies indicate that the channelization complet-

---

1. Plaintiffs have not contended that the Corps does not have the authority to reduce the scope of the work as noticed from a levee and channelization project to a levee project alone.

ed to date appears to have lowered the flowline of the river which might, if in fact lowered, reduce the required height of future levees, and because the Corps is studying an alternative method of disposing of dredge material which might prove to be more acceptable environmentally. The essential question before the Court is whether an EIS can become outdated so that it can no longer provide the foundation upon which a subpart can be tiered. The Court answers this question in the affirmative.

The CEQ regulations do not directly address whether an EIS can become outdated. Such, however, is implicit in the concept of tiering. Tiering of a huge project such as the Yazoo River Basin Flood Control Project, or even a very large project such as the YHP, contemplates an initial programmatic EIS addressing all of the known environmental consequences but recognizes that such a project will be broken into separate subparts and will take years to complete. Obviously, the subparts have to be evaluated as each becomes ready for completion, and such evaluation can be done with "subsequent narrower statements or environmental analyses...." Section 1508.28. The regulations also set forth that an action may become significant because of the cumulative impact of related actions, Section 1508.27(b)(7), and that cumulative impacts include "past, present, and reasonably foreseeable future actions...." Section 1508.7. It is implicit in the recognition that a complete and final evaluation of a large project may not be possible at the front end and that there may be cumulative impacts that the initial EIS may become outdated to the extent that it must be redone or supplemented later.

Under NEPA and the CEQ regulations, an outdated EIS may be updated by means of a supplemental EIS. According to the CEQ regulations, a supplemental EIS shall be prepared if

(i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or

(ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 C.F.R. § 1502.9(c)(1).

Here it is clear from the evidence and admission of the Defendants that the 1975 programmatic EIS is outdated. The Court holds that an outdated EIS cannot serve as the basis for complying with NEPA as to a subpart under the doctrine of tiering. The Corps must first complete a supplemental EIS which evaluates the cumulative impact of all past and reasonably foreseeable future actions within the YHP. Defendants in effect have advanced the argument that, since the Item 3A–2 levee is the last section to be constructed of a virtually continuous 150–mile stretch of levees along the Yazoo River already built by the Corps and since the Item 3A–2 levee itself will have no significant impact upon the environment, construction of the proposed levee should be allowed even though substantial portions of the 1975 EIS are outdated. However, this Court cannot allow the construction of the proposed levee to proceed for pragmatic reasons when the procedural requirements of NEPA have not been satisfied.

The standard of review which a court must employ in reviewing the decision of an agency *not* to prepare a supplemental EIS is an "arbitrary and capricious" standard, that is, "as long as the [agency's] decision not to supplement the [EIS] was not 'arbitrary and capricious,' it should not be set aside." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989). This Court is of the opinion that the decision of the Corps not to supplement the EIS in the instant case was arbitrary and capricious, given that by Defendants' own admission substantial portions of the 1975 EIS are outdated.

The Court is of the opinion, however, that if a supplemental EIS is prepared for the Project, the Item 3A–2 levee will meet NEPA standards through the tiering process, because there is no evidence before the Court of the possibility of a significant

environmental impact from the levee itself. Plaintiffs have presented insufficient evidence, for example, that fish populations will be adversely affected by the levee, either through depletion of food resources or through obstruction of migratory patterns. Plaintiffs have not shown that hardwood trees in the area will be significantly damaged due to the levee. Plaintiffs have not supported their allegation that an endangered plant, *Lindera melissifolia* (pondberry or swamp spicebush) will be endangered by construction of the levee. Finally, the Court is not convinced that noise and air pollution associated with the actual construction of the levee constitutes a significant environmental impact. The Court notes that the possible impacts of the channelization portion of Item 3A–2, such as effects upon food resources for fish, are not relevant to consideration of the impacts of the levee when the tiering process is to be employed.

Evidence was presented to the Court by Defendant–Intervenors, the Levee Boards, that the failure to construct the Item 3A–2 levee may pose a danger to the city of Belzoni, Mississippi, and surrounding areas in the event of a 100–year flood. In particular, if a private levee of apparently questionable integrity now standing in the vicinity of the proposed levee were to be breached by such a flood, large portions of Belzoni and surrounding inhabited areas would almost certainly be inundated. The Court is not unsympathetic to the concerns of persons who might be threatened by such a contingency, nor is the Court unaware that the Levee Boards might accomplish a savings of considerable amounts of public monies by relying on the proposed Corps levee rather than seeking alternative means to protect area residents from possible flooding. However, these considerations do not and cannot alter the fact that the Corps must comply with applicable NEPA requirements before constructing the proposed levee. Moreover, the Court notes the admission of Defendants at trial that the proposed levee could not be constructed before the 1991 flood season even if the

Court were to refrain from enjoining the construction.[2]

IT IS THEREFORE ORDERED that Defendants be enjoined from construction of the Item 3A–2 levee and from condemnation of any lands associated with that construction until a supplemental EIS is prepared for the Yazoo River Basin Flood Control Project and subsequent environmental evaluation of the Item 3A–2 levee is conducted in accordance with the NEPA tiering procedure. Until that time, however, Defendants may proceed with planning, financing, and contracting activities associated with the anticipated construction of the levee, provided that Plaintiffs shall not be held liable for possible losses associated with such activities.

IT IS FURTHER ORDERED that Plaintiffs' request for attorney's fees and costs be denied.

SO ORDERED.

---

**2.** The Court can only speculate that, with swift compliance by the Corps with NEPA require-

ments, the Item 3A–2 levee might be completed by the 1992 flood season.