J.C. COKER, III, et al., Plaintiffs–
Appellees,

Mississippi Wildlife Federation,
Intervenor/Plaintiff–
Appellee,

v.

Col. Francis R. SKIDMORE, in His Official Capacity as District Engineer, Vicksburg District, U.S. Army Corps of Engineers, et al., Defendants–Appellants,

Board of Mississippi Levee Commissioners and Board of Levee Commissioners for the Yazoo Mississippi Delta, Intervenors/Defendants–Appellants.

No. 90–1928.

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1991.

Daniel Lynn, Asst. U.S. Atty., Civ. Div., Jackson, Miss., William B. Lazarus, Dirk D. Snell, U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, D.C., for Skidmore.

Charles S. Tindall, III, Lake, Tindall, Hunger & Thackston, Greenville, Miss., for Bd. of Mississippi Levee Com'rs.

John Whitten, Jr., Breland & Whitten, Sumner, Miss., for Bd. of Levee Com'rs of Yazoo.

Tim Waycaster, James L. Warren, III, Waycaster & Warren, Jackson, Miss., for Coker et al.

Dan H. McDaniel, Heidelberg, Woodliff & Franks, Jackson, Miss., for Mississippi Wildlife Federation.

Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Col. Francis R. Skidmore and all other defendants ("Appellants")[1] appeal from an order of the district court enjoining construction of a levee on the Yazoo River and the condemnation of associated lands until such time as the U.S. Army Corps of Engineers ("Corps") prepares a supplemental Environmental Impact Statement ("EIS") covering the levee construction. *Coker v. Skidmore*, 744 F.Supp. 121, 126 (S.D.Miss. 1990). Because we find that the district court failed to apply Council on Environmental Quality ("CEQ") requirements for preparation of a supplemental EIS, we reverse and vacate the injunction.

## I.

### *Facts and Procedural History*

The facts are largely undisputed. This case concerns the requirements under the National Environmental Policy Act ("NEPA") for construction by the Corps of approximately 5.4 miles of levee along the Yazoo River in Mississippi, as part of the Upper Yazoo portion of the Yazoo River Basin Flood Control Project ("Project"). The Project covers 13,400 square miles in northwest Mississippi. In 1975, the Corps prepared a programmatic final EIS for the Project. The Project as a whole consists of three separately authorized components: the Yazoo Backwater Area Project, the Big Sunflower River Basin Project, and the Yazoo Headwater Project. The Upper Yazoo Projects ("UYP") is a subproject of the Yazoo Headwater Project. One component of the UYP is Item 3A–2, which contemplates approximately 7.2 miles of channelization work and 5.4 miles of levee work on a portion of the Yazoo River. The proposed levee would prevent major river overflow at the City of Belzoni, Mississippi.

On May 29, 1990, J.C. Coker, III ("Coker"),[2] a private landowner whose property would be condemned for construction of the levee, filed a complaint for declaratory and injunctive relief. Coker's complaint alleged that the Corps had violated NEPA in failing to issue a supplemental EIS as to Item 3A–2.[3] Prior to trial, on July 24,

---

1. Appellants are Skidmore, in his official capacity as District Engineer, Vicksburg District, U.S. Army Corps of Engineers; Ltg. Henry J. Hatch, in his official capacity as Chief of Engineers, Dept. of the Army; Roberts W. Page, in his official capacity as Assistant Secretary of the Army, Civil Works; and Michael P.W. Stone, in his official capacity as Secretary of the Army. The district court permitted the intervention of Board of Mississippi Levee Commissioners and Board of Levee Commissioners for the Yazoo Mississippi Delta as defendants.

2. Suit was brought by Coker and Martha Barnwell, individually and as Conservator of Ida Lena Hearn Kimbrough. The district court per-

mitted the intervention of Mississippi Wildlife Federation as plaintiff.

3. Coker's complaint sought the following relief:
   (1) that the Corps be enjoined from proceeding with Item 3A–2;
   (2) that the Corps' attempt to issue an Environmental Analysis on the levee portion of Item 3A–2 be declared unlawful and set aside;
   (3) that the Corps' attempt to proceed with Item 3A–2 without preparing an EIS be declared unlawful and set aside;
   (4) attorney's fees; and
   (5) other appropriate relief.
   Coker also filed a Motion for Preliminary Injunction.

1990, the Corps issued a final Environmental Analysis ("EA") and concluded with a draft Finding of No Significant Impact ("FONSI") as to the levee portion of Item 3A–2. Prior to that time, the Corps had stated its plans to prepare a supplemental EIS for the channelization portion of Item 3A–2 and also all other uncompleted portions of the Yazoo Headwater Project. The FONSI concluded, as to the levee, that a supplement to the final EIS was not required.

The parties agreed to forego a hearing on the plaintiffs' motion for a preliminary injunction and went to trial on the merits.[4] On September 4, 1990, the district court issued an order enjoining the Corps from constructing the levee and condemning associated lands prior to preparation of a supplemental EIS for the remaining uncompleted portions of the Project, including the levee. The district court found that the Corps had not improperly separated, or segmented, the levee from the channelization because the levee could exist apart from the channelization. The court also determined that while "there is no evidence before the Court of a significant environmental impact from the levee itself," nevertheless the procedural requirements of NEPA would not be satisfied until a supplemental EIS on the remaining uncompleted portions of the Project and an environmental evaluation of the levee was complete. 744 F.Supp. at 125–26. The district court based this holding on its conclusion that Skidmore had admitted that the original EIS was outdated.[5] The district court enjoined construction of the levee pending preparation of a supplemental EIS. Appellants appeal the injunction issued by the district court.

## II.

### Discussion

NEPA requires federal agencies proposing major federal acts significantly affecting the quality of the human environment to prepare an EIS. 42 U.S.C. § 4332(2)(C). The Corps prepared an EIS for the Project in 1975. An EIS is a detailed statement by the responsible official concerning, among other things, the environmental impact of the proposed action. *Id.*

The CEQ issues regulations governing compliance with NEPA by federal agencies. 40 C.F.R. § 1500.1 *et seq.* The CEQ regulations provide that, in deciding whether to prepare an EIS, a federal agency must initially determine whether the proposed action is one that either (1) normally requires the preparation of an EIS or (2) is categorically excluded. 40 C.F.R. § 1501.-4(a). If the proposed action falls into neither category, the agency must prepare an EA to determine whether there is a significant potential impact to the environment which would necessitate the preparation of an EIS. 40 C.F.R. § 1501.4(b). If a significant impact is indicated, an EIS must be prepared. If no significant impact is found, a FONSI is issued by the agency. 40 C.F.R. § 1508.13.

When a series of related actions is planned by an agency, the agency may choose one of two alternatives: (1) the preparation of a single programmatic EIS for the entire series of projects, or (2) division of the actions with preparation of a separate EIS, EA, or FONSI for each action. Because some projects are too large to complete at one time and must be divided into parts, an agency can rely upon

---

**4.** We note that there is no explanation in the record below for the fact that a trial was held in this case, rather than simply a review by the district court of the record of the Corps' proceedings. Ordinarily review of administrative decisions should be confined to consideration of the decision of and record before the agency. *See, e.g., Federal Power Comm'n v. Transcontinental Gas Pipeline Corp.,* 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976); *Louisiana ex rel. Guste v. Verity,* 853 F.2d 322, 327 n. 8 (5th

Cir.1988); *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 904–05 (5th Cir.1983).

**5.** According to the district court, "the decision of the Corps not to supplement the EIS in the instant case was arbitrary and capricious, given that by Defendants' own admission substantial portions of the 1975 EIS are outdated." 744 F.Supp. at 125.

tiering.[6] Appellants contend that the Corps can rely upon tiering to avoid preparation of an EIS on the levee based upon the original 1975 programmatic EIS and the issuance, pursuant to the EA, of a FONSI regarding the levee.

According to the district court, if the Corps has a valid programmatic EIS, it may rely on tiering as to the levee. The district court found, however, that the 1975 EIS was outdated and therefore invalid. The central question before it, determined the district court, was whether an EIS can become so outdated that it can no longer provide the foundation upon which a subpart, such as the levee, can be tiered. 744 F.Supp. at 125. The district court answered in the affirmative.

The issue before this court is not whether an EIS can become outdated, but whether the 1975 EIS in the instant case was insufficient so as to require the preparation of a supplemental EIS before construction of the levee.

CEQ regulations state that an agency must supplement an EIS if:

i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or

ii) There are significant[7] new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 C.F.R. § 1502.9(c).[8] Corps regulations provide, in relevant part, that "[a] supplement to the draft or final EIS on file will be prepared whenever significant impacts resulting from changes in the plan or new significant impact information, criteria or circumstances relevant to environmental considerations impact on the ... proposed action." 33 C.F.R. § 230.11(b).

The Corps issued a FONSI based on its EA concluding that the levee would not cause significant environmental impacts and that a supplement for the extant EIS

**6.** The CEQ regulations explain tiering as follows:

> Agencies are encouraged to tier their environmental impact statements to eliminate repetitive discussions of the same issues and to focus on the actual issues ripe for decision at each level of environmental review. 40 C.F.R. § 1508.28. Whenever a broad environmental impact statement has been prepared (such as a program or policy statement) and a subsequent statement or environmental assessment is then prepared on an action included within the entire program or policy (such as a site specific action) the subsequent statement or environmental assessment need only summarize the issues discussed in the broader statement and incorporate discussions from the broader statement by reference and shall concentrate on the issues specific to the subsequent action. The subsequent document shall state where the earlier document is available. Tiering may also be appropriate for different stages of actions.

40 C.F.R. § 1502.20.

**7.** CEQ regulations define the term "significantly," in relevant part, as follows:

> "Significantly" as used in NEPA requires considerations of both context and intensity:
> (a) *Context.* This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality. Signifi-

cance varies with the setting of the proposed action....
> (b) *Intensity.* This refers to the severity of impact.... The following should be considered in evaluation of intensity:
> (1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.
> (2) The degree to which the proposed action affects public health or safety.
> (3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.
> (4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.
> (5) The degree to which the effects on the quality of the human environment are likely to be highly uncertain or involve unique or unknown risks.

> . . . . .

> (9) The degree to which the action may adversely affect an endangered or threatened species or its habitat....
> (10) Whether the action threatens a violation of Federal, State, or local law....

40 C.F.R. § 1508.27.

**8.** An agency "may also prepare supplements when [it] determines that the purposes of [NEPA] will be furthered by doing so." 40 C.F.R. § 1502.9(c).

was not required. The district court apparently agreed with the FONSI, holding that "there is no evidence before the Court of the possibility of a significant environmental impact from the levee itself." 744 F.Supp. at 125–26.

A reviewing court will not set aside an agency decision not to supplement an EIS under NEPA unless the decision was "arbitrary and capricious." *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 377, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989). The district court held that the Corps' decision "not to supplement the EIS was arbitrary and capricious, given that by Defendants' own admission substantial portions of the 1975 EIS are outdated." 744 F.Supp. at 125.

■■■ This court reviews the district court's review of the Corps' decision *de novo,* inasmuch as it involves the district court's conclusions of law concerning the sufficiency of the EIS. *See In re Fredeman Litigation,* 843 F.2d 821, 824 (5th Cir.1988); *Headwaters, Inc. v. Bureau of Land Management,* 914 F.2d 1174, 1177 (9th Cir.1990); *Oregon Natural Resources Council v. Lyng,* 882 F.2d 1417, 1422 (9th Cir.1989), *amended,* 899 F.2d 1565 (9th Cir. 1990). We find that the district court erred in holding that the Corps' decision not to supplement the EIS before commencing construction of the levee was arbitrary and capricious. The district court did not make the findings necessary to support an order requiring a supplemental EIS as to the levee under the Corps or CEQ regulations. A court may only order the preparation of a supplemental EIS if "there are significant new circumstances ... relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c); *cf.* 33 C.F.R. § 230.11(b). The district court did not make such a finding, and it is not implicit in the court's opinion. *Cf. Fritiofson v. Alexander,* 772 F.2d 1225, 1248 (5th Cir.1985). To the contrary, the

district court found that there was "no evidence ... of the possibility of a significant environmental impact from the levee itself." 744 F.Supp. at 125–26.

In determining whether the Corps' decision not to prepare a supplemental EIS was "arbitrary and capricious," the district court " 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Marsh,* 490 U.S. at 378, 109 S.Ct. at 1861 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)). Inasmuch as the district court essentially restated the critical assessment of the Corps' FONSI, the Corps made no clear error of judgment, and the district court erred in subsequently finding the Corps' decision arbitrary and capricious.

■■■ The district court held that compliance with NEPA requires the Corps to update the "outdated" EIS. 744 F.Supp. at 126. An EIS need not be supplemented whenever new information concerning a project comes to light. *See Marsh,* 490 U.S. at 373, 109 S.Ct. at 1859.[9] Nor need the Corps update an EIS when portions of it become out-of-date. *Cf. Sierra Club v. U.S. Army Corps of Engineers,* 701 F.2d 1011, 1036 (2nd Cir.1983) ("mere passage of time rarely warrants an order to update the information to be considered by the agency"). CEQ regulations only require a supplemental EIS if there are "significant new circumstances" that arise concerning the levee. *See* 40 C.F.R. § 1502.9(c)(1); *cf.* 33 C.F.R. § 230.11(b) ("significant impacts"). The district court did not make a finding of "significant new circumstances," and in fact explicitly found no possibility of a significant environmental impact. 744 F.Supp. at 125–26. Absent the findings required by the CEQ regulations, the district court erred in requiring the preparation of a supplemental EIS.[10]

**9.** "To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh,* 490 U.S. at 373, 109 S.Ct. at 1859.

**10.** The parties devote considerable space in their briefs to the issue of whether Col. Skidmore's testimony constituted an admission that the EIS was "outdated." Because the term "outdated" is not a term of art in the CEQ regula-

Inasmuch as the district court and the Corps agree on the basic conclusion of the Corps' FONSI, that the levee presents no possibility of significant environmental impact, issuance of the injunction was improper. Construction of the levee should no longer be delayed.

## III.

### Conclusion

For the foregoing reasons the district court's order enjoining construction of the Item 3A–2 levee and condemnation of associated lands is VACATED. The mandate shall issue forthwith.

tions, and the district court failed to make the required statutory findings on the necessity for supplementing the EIS for the levee, we will not address the issue of whether the district court erred in its assessment of Col. Skidmore's testimony as an admission.