621 So.2d 481 (1993)
Francine S. SCHILLER, Appellant,
v.
Paul MILLER, Appellee.
No. 92-2386.
District Court of Appeal of Florida, Fourth District.
May 26, 1993.
Gary A. Dumas and Karen L. Trafford of Styles, Dumas & Trafford, P.A., Fort Lauderdale, for appellant.
Bruce L. Hollander of Hollander & Associates P.A., Hollywood, for appellee.
PER CURIAM.
We affirm a temporary restraining order enjoining Schiller from disposing of four pieces of jewelry, including a 5.8 carat diamond engagement ring, and limiting Miller's bond to $1,000.00. During the parties' lengthy personal relationship Miller purchased jewelry which was kept in a safe in the parties' home. They also purchased real property together which is held by Schiller. When the relationship ended, Schiller claimed the jewelry and placed it in a safe deposit box. Miller's complaint seeks both legal and equitable relief.
Initially, the court entered an ex parte restraining order. Schiller moved to dissolve *482 that order because it failed to meet the requirements of rule 1.610, Florida Rules of Civil Procedure.
The matter was set for an evidentiary hearing. After that hearing, the court entered an interim order dissolving the ex parte injunction, but ordering Schiller not to dispose of the jewelry pending further order of the court. The court then entered an order prohibiting dissipation of the assets.
We recognize that injunctions may not be granted for the retention of personal property unless it is found to be unique or otherwise peculiar, and unless the plaintiff demonstrates that there is no adequate remedy at law. E.g. Esposito v. Horning, 416 So.2d 896 (Fla. 4th DCA 1982). However, here the trial court made the following findings:
C. That the personal property which is the subject matter hereof, hereinafter referred as the "jewelry", is as follows:
(a) One handmade platinum ladies engagement diamond ring with a center pear shaped diamond of 5.81 cts., G-H in color, S12 in clarity with matching tapered baguettes with 1.40 cts. total weight.
(b) One florentine tennis bracelet containing 34 genuine brilliant round cut diamonds, eye clean, near colorless weighing approximately 8.04ct. hand set in a 14K gold mounting.
(c) One ladies aquamarine and diamond ring.
(d) One ladies tourmaline necklace.
D. A few months after the purchase of each of the aforementioned pieces of jewelry, same were appraised for considerably more than their original purchase price. By way of example, the engagement ring which was purchased for $38,000.00 and that a few thousand dollars more was spent on baguettes for same appraised for $60,000.00.
E. Although it is a given that items of jewelry can always be sold, the testimony of the Defendant was that she did not know the value of any of the pieces and that if same were sold on a rush or quick basis, that such a sale would greatly diminish the sales price. Additionally, the Defendant testified that tourmaline is difficult to obtain and is not currently readily available in the marketplace.
F. The Defendant testified that the jewelry is in her possession in her box at Citibank and that both she and her sister, Lisa, have access to the box.
G. The Defendant stated that she had no intention of disposing of any of the aforementioned four pieces of jewelry during the pendency of Plaintiff's request for injunctive relief.
H. That the actual present market value of the aforementioned four pieces of jewelry is difficult to ascertain as they are all unique one of a kind creations and that inasmuch as neither of the parties hereto could ascribe a value to same, this Court cannot place a value on the jewelry.
I. That all of the jewelry was purchased with the funds of the Plaintiff.
J. That each of the parties claim an interest in the jewelry.
Given the findings with respect to the unique aspect of the property, the findings as they bear on whether Appellee has an adequate remedy at law, and the presumptions accorded the court's findings, we cannot say the trial court abused its discretion. Cf. Price v. Gordon, 129 Fla. 715, 177 So. 276 (Fla. 1937).
We also note that the effect of the court order is essentially to maintain the status quo, other than to improve the security arrangements with respect to the safe deposit box. Further, the Appellant has not demonstrated that the bond posted is grossly inadequate under these circumstances. See Minimatic Components, Inc. v. Westinghouse Electric Corporation, 494 So.2d 303 (Fla. 4th DCA 1986).
Appellant is not precluded from seeking a modification of the injunction in the event that the bond should subsequently prove to be insufficient. However, at this time Appellant acknowledges that she has no intention of disposing of the property.
*483 ANSTEAD and STONE, JJ., concur.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
As their romance blossomed, he purchased several pieces of jewelry, namely a diamond ring of 5.8 carats costing $38,000, a tourmaline necklace costing $2,750, a ring costing $8,700, and a diamond bracelet costing $6,000. She says he gave them to her; he says he lent them to her. She says they were hers; he says only to wear. Gift, loan, own, wear  soon they decided to call the whole thing off. When he sued her for them, the chances that they would call the calling-off off[1] dimmed considerably.
In an eight-count, verified complaint, he alleged causes of action for conversion, replevin, breach of an implied contract, partition of real and personal property, constructive trust, breach of a partnership agreement, and replevin of an engagement ring. One of the "counts" was an emergency motion for an injunction to forbid her from removing the jewelry from a specified safety deposit box. The motion alleged that the jewels were "unique", but omitted any facts showing their uniqueness.
Upon filing the complaint, a judge granted the injunction without notice to her, requiring a bond of $1,000. The order failed to contain any findings as to why any injury may be irreparable and any reasons for granting the injunction without notice to her. Similarly, it failed to have the hour and time of the entry endorsed on it.
She moved to dissolve the injunction for obvious noncompliance with rule 1.610, Florida Rules of Civil Procedure, and because there was no showing of the requirements for such an injunction. She emphasized that it was apparent from the face of the complaint that he had an adequate remedy at law. After an evidentiary hearing, the assigned judge amended the injunction to apply to any safety deposit box as to which she was a signatory. At the same time, the judge granted the motion to dissolve, saying that "the subject property is not contained in the safety deposit box subject to the order."
Eleven days after the evidentiary hearing, the judge entered the order under review. The findings critical to our review include the following:
D. A few months after the purchase of each of the aforementioned pieces of jewelry, same were appraised for considerably more than their original purchase price. By way of example, the engagement ring which was purchased for $38,000 and that [sic] a few thousand dollars more was spent on baguettes for same appraised for $60,000.
E. Although it is a given that items of jewelry can always be sold, the testimony of the Defendant was that she did not know the value of any pieces and that if same were sold on a rush or quick basis, that such a sale would greatly diminish the sales price. Additionally, the Defendant testified that tourmaline is difficult to obtain and is not currently readily available in the marketplace.[2]
* * * * * *
H. That the actual present market value of the aforementioned four pieces of jewelry is difficult to ascertain as they are all unique one of a kind creations and that inasmuch as neither of the parties hereto could ascribe a value to same, this Court cannot place a value on the jewelry.
On the basis that the court has "inherent equitable powers" to prevent the dissipation of property in suit, the court thereupon entered an order prohibiting her from disposing of the four items of jewelry pending the final judgment. She appeals. I think we should reverse.
There can be little doubt that the form of the temporary injunction was improper. The failure to make factual findings as to irreparable harm, the failure to give any reason for dispensing with prior notice to *484 the opposing party, and the failure to endorse the time of entry on the face of the order, all required that it be dissolved. I thus have no problem with the trial judge's order dissolving the injunction in the first instance.
The real question is whether, after hearing the evidence of the parties, the trial court had any basis at all to enter an injunction. In order to justify an injunction before final judgment, the party seeking such relief must establish a clear legal right entitling the party to equitable relief, the fact of irreparable harm if injunctive relief is not given, the absence of adequate legal remedies, and a substantial probability of prevailing on the merits. Employee Benefit Plans Inc. v. Radice Corporate Center I Inc., 593 So.2d 1125 (Fla. 4th DCA 1992); Playpen South Inc. v. City of Oakland Park, 396 So.2d 830 (Fla. 4th DCA 1981); and Contemporary Interiors Inc. v. Four Marks Inc., 384 So.2d 734 (Fla. 4th DCA 1980). Plaintiff's foray here into equitable jurisdiction[3] founders on the absence of a clear right to the chancellor's powers.
It has long been the rule in Florida that an injunction will not be granted for the return or retention of personal property, which this jewelry indisputably is, unless it is of peculiar value or character and one cannot be fully compensated in damages. E.g. Price v. Gordon, 129 Fla. 715, 177 So. 276 (1937); First National Bank in St. Petersburg v. Ferris, 156 So.2d 421 (Fla. 2d DCA 1963). Indeed, we ourselves have so recognized. See Esposito v. Horning, 416 So.2d 896 (Fla. 4th DCA 1982).
The evidence in this case establishes neither peculiarity nor the inadequacy of compensatory damages. In fact, plaintiff himself betrayed the adequacy of money damages when he testified:
Q. You didn't buy the stuff for investment, did you?
A. Yes, I did.
This amounts to an outright concession that money would be entirely adequate to compensate him for the loss or retention of this jewelry, and that indeed he actually purchased the pieces to make money on them. It also destroys the notion that some sentimental attachment or some esthetic quality in them inhibits his ability to part with them. He can hardly be heard to concede as much and at the same time argue that the pieces are so peculiar that money cannot replace them.
I note that one of the pieces here is what he claims to have been an engagement ring.[4] In Gill v. Shively, 320 So.2d 415 (Fla. 4th DCA 1975), we recognized that the Florida "Heart Balm" statute, now section 771.01, Florida Statutes (1991), does not preclude an action for replevin of an engagement ring. Our decision was premised on the idea that an engagement ring is a conditional gift, one that is dependent as Judge Downey noted on a voyage on the sea of matrimony. If the voyage never gets underway, then the gift is never perfected, and the jilted suitor may seek its return by the traditional legal remedy of replevin. It should be unnecessary to note that replevin is a legal remedy and, in any event, the failure of replevin does not as such establish the failure also of money damages.
It appears to me that the trial court was distracted by the lack of testimony establishing the current value of the pieces.[5] *485 But the failure of both parties to show a value is not the same thing as showing that the pieces are truly peculiar, in that they are actually invaluable  that is, that money could not possibly compensate for their loss. There is absolutely no evidence in this record even remotely suggesting that fact. Rather, the testimony of the plaintiff actually belies any inadequacy of money damages.
I fear that the majority has allowed themselves the same distraction. That has lead them to conclude that the critical issue is covered by the narrow scope of review we usually give to discretionary decisions. If the plaintiff had made out a case within equitable jurisdiction by showing both peculiarity of the personal property as well as the inadequacy of money damages, I should have no difficulty in viewing the trial judge's decision as a discretionary call, i.e. whether to grant a temporary injunction during the pendency of the case in order to maintain the status quo ante.
But trial judges are not given their equitable powers simply because someone may ask for a temporary injunction to freeze things until a trial can be had and a final judgment entered. A litigant must invoke those powers by sufficient and proper proof of facts bringing the litigant's case within equitable jurisdiction. One does not accomplish that necessity by simply labeling something as "unique", any more than one can do so by simply incanting the words "irreparable harm."
The entitlement to injunctive relief as to personal property was deliberately made difficult to obtain. The ordinary rule, described above, is that an injunction to maintain or return personalty will not be granted without a clear showing that the property is peculiar and money could not possibly compensate for its loss. While judges must be ever vigilant for the unusual case falling into the exception, they should not strain to find the exception in the usual case. To do so, as this trial judge did, is to convert the exception into the rule  to destroy the predictability and stability of a law of rules into the unpredictable and thus unstable law of discretion.
Discretion is given to trial judges because there is always an unusual case that does not fit into, or is not contemplated by, the rule, even the most pervasive and often applied rule. These cases at the margin, where no rule can be eternally applied with fairness, are thus tolerated under a different rule, called the rule of discretion.
Because the efficacy of a legal system in a democratic society depends on the predictability of the law, we should apply the rule of discretion only in those cases where a traditional rule of decision does not fit. If we routinely use discretion when established rules of decision fit the facts, as here, we destroy the law's predictability, erode respect for the law as a decider of disputes according to established rules, and render trial judges' decisions essentially unreviewable.
I would reverse the temporary injunction under appeal and remand with instructions to determine the amount of costs and damages to which defendant is entitled for the wrongful issuance of the subject injunction. See Merrett v. Nagel, 564 So.2d 229 (Fla. 5th DCA 1990).
NOTES
[1] Gershwin, "Let's Call the Whole Thing Off," from Shall We Dance?
[2] There is absolutely no evidence to support the last sentence dealing with the availability of tourmaline.
[3] The term "equitable jurisdiction" does not refer to the subject matter jurisdiction of the circuit court under section 26.012(2)(c), Florida Statutes (1991). It is intended, rather, to encompass the traditional terms "in equity" and "in chancery" by which one describes the body of rules of decision which began under the English Chancellor as remedies from the rigid legal rules of the law courts.
[4] She testified, however, that he gave her this ring long before they even discussed marriage. The trial judge did not resolve this conflict, but the conflict is not significant. It obviously shows that the proponent of this temporary injunction failed to establish a critical element that he had the burden to demonstrate.
[5] Actually, the notion underlying the conclusion of both the trial court and this one appears to be that the more a thing costs the more likely it is to be "unique". In a society where routine feats of physical prowess on an athletic field are deemed "awesome", and where the commonplace is frequently said to be "very [sic] unique", it is perhaps not surprising that increases in cost or money expended for a thing are perceived as a useful device to measure "uniqueness." One could be forgiven for longing for a return to the notion that something either is unique or it is not, but there are no gradations of uniqueness. Similarly, cost or value does not at all equate with "uniqueness" or, for that matter, with the real test in this case, i.e. peculiarity.