**Nicholas PAPADOPOULOS and Myland Enterprises Ltd.,**
Plaintiffs,

v.

**Roberto Edmundo SIDI and Garlon Frost, Defendants.**

Case No. 05–22010–CIV.

United States District Court, S.D. Florida.

Jan. 3, 2008.

Max Aaron Goldfarb, Miami, FL, for Plaintiffs.

Roberto Edmundo Sidi, Fisher Island, FL, pro se.

Garlon Frost, Addison, TX, pro se.

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION FOR PERMANENT INJUNCTION

PATRICIA A. SEITZ, District Judge.

THIS CAUSE is before the Court on the Report and Recommendation of the Honorable Chris McAliley, United States Magistrate Judge [DE–255]. While recognizing Plaintiffs' frustrations, Magistrate Judge McAliley recommends denying Plaintiff's Motion for a Permanent Injunction and/or Restraining Order Against Defendant Roberto Edmundo Sidi [DE–215, 230].[1] Having reviewed the thorough and well-reasoned Report and Recommendation, there being no objection from any party, it is hereby

ORDERED that the Report and Recommendation [DE–255] is AFFIRMED AND ADOPTED, and

IT IS FURTHER ORDERED that Plaintiff's Motion [DE–215, 230] is DENIED.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANT SIDI

CHRIS McALILEY, United States Magistrate Judge.

Pending before this Court is Plaintiff Myland Enterprise's Emergency Motion and Memorandum for a Permanent Injunction and/or Restraining Order Against Defendant Roberto Edmundo Sidi. [DE 215, 230].

### 1. Background.

On February 8, 2007, the Honorable Patricia A. Seitz entered final judgment in favor of Plaintiff Myland Enterprises, Ltd. jointly and severally against Defendants Roberto Edmundo Sidi and Garlon Frost in the amount of $500,000, plus prejudgment interest on one-half of the award from December 22, 2004, and on the other half of the award from February 22, 2005, and against Defendant Sidi individually in the amount of $200,000, plus prejudgment interest from April 8, 2005. [DE 104]. Shortly thereafter the Clerk issued a Writ of Execution [DE 106] and since that time Plaintiff has actively engaged in proceedings to collect on the judgment.

Plaintiff's pending motion is part of its collection efforts. According to the Motion, Sidi has entered into a consulting agreement with the company HSW International (HSWI). Under the agreement, in consideration for Sidi's consulting services, HSWI granted Sidi the option, for a five year period, to purchase 600,000 shares of HSWI stock at $6.50 a share.[1] At the time the Motion was filed, the stock was trading at $9.08 per share [DE 230, ¶ 10]. The price has fluctuated since that time, repeatedly falling below the options price.

In its Motion (which Plaintiff initially filed under seal) [see DE 214, 229], Plain-

---

1. DE–230 is the unsealed version of Plaintiff's motion, initially filed under seal at DE–215.

1. Although the Motion indicated that the stock options may bear certain restrictions which could limit Plaintiff's ability to reach the options to satisfy its judgment, [DE 230,

Oct. 4, 2007 e-mail from Henry Adorno, Esq. to Max Goldfarb, Esq.], the consulting agreement was later filed with the Court and does not appear to contain such a restriction. [DE 232–2].

tiff asks that Sidi be permanently enjoined from exercising these stock options without prior approval of the Court. Plaintiff states it has "no adequate remedy at law to attach the stock options" [DE 230, ¶ 11], and believes that without the injunction Sidi may exercise the options and "abscond with the proceeds and never satisfy the judgment entered against" him. [*Id.*]. According to Plaintiff, "injunctive relief is required because of the peculiar nature of the property [stock options] owned by the defendant...." [*Id.*]. Plaintiff cites a number of cases that supposedly support his bid for an injunction, but this Court considers them of limited value, as they all address injunctive relief in the pre-judgment context. Finally, with no analysis, Plaintiff also cites the All Writs Act, 28 U.S.C. § 1651(a), as authority for this Court to grant the relief Plaintiff seeks. [DE 230, ¶ 11].

Plaintiff asserts it has considered and rejected garnishment proceedings as a mechanism to gain control of the stock options. [DE 230, ¶ 4]("Plaintiff is requesting this emergency motion because it fears that the garnishment of HSW International, Inc. (HSWI) will not necessarily limit the defendant, Sidi, from exercising the stock options and then concealing the resulting assets.").[2] Plaintiff also expressly states it "is not asking this court for an [order of] attachment" [DE 230, ¶ 12], and acknowledges that "[t]hese options cannot be physically levied upon by the U.S. Marshal at this time." [DE 230, ¶ 11].

Plaintiff does not indicate what further action it intends to take vis-a-vis the stock options in the event the Court enters the injunction. The Court can only speculate that the relief Plaintiff seeks is not, in fact, permanent, and at some point Plaintiff will ask for an additional injunction, ordering Sidi to exercise his option when the stock reaches a desired price, and to transfer the proceeds to Plaintiff.

On October 9, 2007, the presiding District Court Judge issued an Order Granting in Part Plaintiff's Emergency Ex Parte Motion For Temporary Restraining Order. [DE 211]. Specifically, the Court ordered that

> Defendant Robert Edmundo Sidi, and any successors, assigns, officers, agents, attorneys, employees, or other persons acting on Sidi's behalf, are ENJOINED from exercising, selling, transferring or otherwise encumbering any outstanding options in the purchase of HSW International, Inc., securities without prior approval of the Court....

[DE 211, p. 2]. The Order stated it would expire in ten days (on October 20, 2007 at 11:00 a.m.), and that this Magistrate Judge would hold a hearing on the motion on October 19, 2007. Finally, the Order provided:

> Plaintiff must personally serve this order on Defendant Sidi and provide proof of service at the October 19, 2007 hearing. Provided Defendant Sidi has received proper notice, he is advised that failure to appear at the hearing or otherwise respond will be construed as his assent that the Magistrate convert this TRO into permanent injunctive relief.

[DE 221, p. 3].

Sidi clearly received notice of the temporary restraining order because he ap-

---

2. Despite this statement, at about the same time that Plaintiff filed this motion, it also had the Court issue a Writ of Garnishment to HSWI [*see* DE 207, 208], which HSWI has answered, stating that it is not indebted to Sidi, but acknowledging that it is party to a consulting agreement with Sidi (which was attached to the answer) that grants Sidi certain stock options. [DE 232]. The Writ and Answer are pending before this Court, but Plaintiff has not moved for entry of judgment on the Writ.

peared, through counsel, at the October 19, 2007 hearing noticed in the temporary restraining order.[3] At that hearing, the parties advised this Court that they were in the process of negotiating a final settlement in satisfaction of the judgment and asked the Court to postpone consideration of the pending motions, including the motion for permanent injunction, to allow the parties more time to reach an agreement. [*See* DE 217]. The parties, including Sidi's counsel, specifically consented to the TRO remaining in effect until November 9, 2007 at 11:00 a.m., and further agreed that if they could not reach a final settlement by November 7, 2007, they would appear before this Court on that date for a hearing on all pending motions, including the injunction motion. [*Id.*].

The parties did not reach a settlement agreement and the Court went forward with the November 7th hearing. Although he indisputably had notice through his counsel of the November 7th hearing, Sidi did not attend the hearing, nor did he have counsel appear on his behalf. Plaintiff's counsel argued in favor of Plaintiff's motion for a permanent injunction, and at the conclusion of the hearing this Court took the matter under advisement to prepare this Report and Recommendation. To preserve the status quo, this Court also issued an order extending the temporary restraining order until the Honorable Patricia A. Seitz rules on this Report and Recommendation. [DE 235].[4]

---

**3.** Anthony Lopez, Esq. appeared as counsel for Sidi for the purpose of the October 19th hearing only. [*See* DE 217].

**4.** The Court did so relying on the provision in the temporary restraining order that Sidi's "failure to appear at the hearing or otherwise respond will be construed as his assent that the Magistrate convert this TRO into permanent injunctive relief." [DE 211, p. 3].

## 2. Analysis

### a. The permanent injunction Plaintiff seeks is not contemplated by Rule 69(a)

Federal Rule of Civil Procedure 69 governs the process for the enforcement of money judgments. The Rule directs that proceedings in aid of execution of a judgment "shall be in accordance with the practice and procedure of the state in which the district court is held...." Fed. R.Civ.P. 69(a).[5] Chapter 56, Florida Statutes, governs execution of judgments, Chapter 76 provides for attachment of property and Chapter 77 sets forth the procedures for garnishment. These statutes include provisions, too numerous to summarize here, which provide a variety of limitations and protections during the collection process.

For example, Florida Statute section 76.04 limits the circumstances under which a creditor may attach a debtor's property and section 76.12 requires that a writ of attachment not issue "until the person applying for it ... makes a bond with surety to be approved by the clerk payable to defendant in at least double the debt demanded...." Similarly, the garnishment statutes prescribe specific notice provisions and procedures for contesting a writ of garnishment. Fla. Stat. §§ 77.01–77.28. Importantly, nowhere in any of these statutes has the Court found a provision for enjoining judgment debtors from using personal property or assets.

---

**5.** The Rule also provides that "any statute of the United States governs to the extent it is applicable." Fed.R.Civ.P. 69(a). Neither the parties or this Court have identified any federal statute applicable to Plaintiff's efforts to execute on this judgment.

Rule 69 thus sets out a path upon which judgment creditors must proceed to execute on judgments, and Plaintiff has cited no authority that it or this Court may stray from that path. Put differently, Plaintiff has provided no authority that this Court has the inherent power to issue injunctions to aid a judgment creditor in collection, independent of the "practice and procedure of the state in which the district court is held." Fed.R.Civ.P. 69(a).

This Court, in its own research, has not found any decision that squarely addresses the issue presented by Plaintiff's motion.[6] The Court has identified several decisions of this Circuit, however, concerning *pre*-judgment attachment and garnishment proceedings, where the appellate court held that those express statutory provisions could not be circumvented by the issuance of an injunction; these decisions support this Court's conclusion that it should not grant Plaintiff the relief it seeks.

In *ITT Community Dev. Corp. v. Barton,* the Fifth Circuit Court of Appeals considered whether the district court, pre-judgment, had lawfully enjoined a third party to deposit funds into the registry of the court. 569 F.2d 1351 (5th Cir.1978).[7] The plaintiff in that diversity action initiated pre-judgment garnishment proceed-

ings in accordance with a Florida statute. 569 F.2d at 1357–58.[8] Writs of garnishment were served on the third party, however, the plaintiff did not appear to have satisfied certain prerequisites mandated by the garnishment statute. On appeal, the Eleventh Circuit found that rather than resolve the disputed issues regarding the garnishment (and possibly enter a judgment on the garnishment), the district court had simply ordered the garnishee to deliver the disputed funds to the clerk of the court. *Id.* at 1358. The appellate court rejected the notion that the trial court had the inherent power to issue this injunction, or that it could circumvent the Florida statutory garnishment scheme, and made the following observations:

> [Plaintiff] pointed to no statutory provision in Florida's garnishment scheme, and we can find none, that would have explicitly authorized a Florida court, presiding over issues such as these, to order the garnishee to pay funds into the registry of the court to secure the payment of a judgment that might subsequently be entered against the garnishee. In fact, under the statutory scheme, the only method of satisfying a judgment against a garnishee who declined to pay it voluntarily was through a writ of execution. *In the light of*

**6.** This Court did identify one decision, *Ksaibati v. Ksaibati,* in which a Florida appellate court held that a trial court should not have issued an injunction, post-judgment, ordering a party to deposit funds in the registry of the court, so that the other party might have a fund from which to collect a possible future award of attorney's fees. 824 So.2d 219 (Fla. 2d DCA 2002). While this outcome is consistent with the recommendations here, the *Ksaibati* case is of limited value as it was resolved on narrow grounds and does not explore the issues raised by Plaintiff's motion.

**7.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all deci-

sions handed down by the former Fifth Circuit before October 1, 1981.

**8.** By the time the Fifth Circuit issued its decision, the Florida Supreme Court had declared the statute unconstitutional. 569 F.2d at 1357 n. 14 (citing *Ray Lein Construction v. Wainwright,* 346 So.2d 1029 (Fla.1977)). Rather than resolve whether the Florida Supreme Court's decision had retroactive application to the case before it, the Fifth Circuit addressed the application of the garnishment statute on the merits, and considered whether an injunction could be issued in lieu of the statute. *Id.*

*what we consider to have been an unambiguous legislative intent to defer to this method of satisfying a judgment in garnishment, we are loathe to find an implied statutory authorization for the injunctive remedy the trial court fashioned in this case.*

569 F.2d at 1358 (emphasis added).

The Eleventh Circuit, in *Rosen v. Cascade Int'l., Inc.,* engaged in a similar analysis. 21 F.3d 1520 (11th Cir.1994). There, the plaintiff sued for money damages for alleged securities law violations. *Id.* at 1522. Before trial, the court issued a preliminary injunction barring the defendant from transferring or liquidating certain assets in order to protect the plaintiff's ability to collect on a money judgment, if one was later entered in plaintiff's favor. *Id.* at 1525–26. The Court of Appeals reversed and held that the preliminary injunction was not an appropriate exercise of the district court's authority. *Id.* at 1527–1530. It observed that Federal Rule of Civil Procedure 64 authorizes the prejudgment attachment of property for the benefit of a plaintiff in certain circumstances and "provides the proper vehicle" for doing so, *Id.* at 1530, that is, "under the circumstances and in the manner provided by the law of the state in which the district court is held." Fed.R.Civ.P. 64. Looking past the terminology used by the parties and focusing on the actual nature of the relief requested, the Eleventh Circuit concluded that the remedy sought by plaintiffs "is equivalent to a writ of attachment", and that the district court should have employed the procedures of Florida attachment law. 21 F.3d at 1530. The Court explained:

In actions at law, plaintiffs in Florida possess an adequate, exclusive prejudgment remedy for the sequestration of assets under the attachment statute, provided that they can satisfy the enumerated statutory grounds for relief. Accordingly, the use of injunctive relief as a substitute for the remedy of prejudgment attachment, with its attendant safeguards, is improper.

21 F.3d at 1531 (citation omitted). The Court underscored the idea that an injunction can not substitute for the statutory procedures mandated by Florida law:

Rule 64 commands that the proper pretrial remedy to ensure that a fund will be available with which to satisfy a money judgment, a writ of attachment, is available according to the provisions of the forum state's law. But "[w]here the state attachment statute does not authorize prejudgment attachment in a given case, a district court is not authorized ... to attempt to accomplish the same result by issuing a preliminary injunction."

21 F.3d at 1531 (quoting *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1522 n. 24 (11th Cir.1994)).[9]

This Court can see no reason why the principles espoused in *ITT Community Dev., Rosen* and *Mitsubishi* should not govern Plaintiff's request here for injunctive relief. Just as Rule 64 sets forth the available pre-judgment remedies for securing satisfaction of a judgment, Rule 69 sets forth the available post-judgment remedies to satisfy a judgment. Both Rules defer to the law "of the state in which the district court is held." Fed.R.Civ.P. 64 and 69(a). In this case, the relief Plaintiff seeks is akin to the Florida remedies of

---

**9.** The Eleventh Circuit in *Mitsubishi* reached the same conclusion, again in the pre-judgment context: "Where the state attachment statute does not authorize prejudgment at-

tachment in a given case, a district court is not authorized under Rule 65 to attempt to accomplish the same result by issuing a preliminary injunction." 14 F.3d at 1522 n. 24.

attachment and garnishment (which are available to Plaintiff under Rule 69(a)), yet Plaintiff has apparently concluded that it can not, or prefers not to, satisfy the requirements of those Florida laws. That Plaintiff may be unable to attach or garnish Sidi's stock options does not mean that this Court can create a remedy, not contemplated by Rule 69, and simply enjoin Sidi from exercising those options.

The Fifth Circuit, in *Dixie Carriers, Inc. v. Channel Fueling Service, Inc.*, 843 F.2d 821 (5th Cir.1988), again in the pre-judgment context, held that district courts lack the inherent authority to preliminarily enjoin a defendant from transferring assets, where those assets are unrelated to the underlying litigation.[10] The Court noted that the relief sought there was akin to the remedy of attachment, available under Rule 64. That the plaintiffs could not satisfy the requirements of the attachment statute, however, did not empower the court to issue an injunction. *Id.* at 826. The Court also observed that the plaintiffs before it (like Plaintiff here), did not distinguish the controlling cases "but contend primarily that the defendants are scoundrels who will try to escape judgment, an allegation that, even if true, would not justify the preliminary injunction." *Id.*

In sum, the principles espoused in *ITT Community Development, Rosen, Mitsubishi,* and *Dixie Carriers* require this Court to bear allegiance to the mandate of Rule 69, and the Florida statutory procedures for execution on a judgment. Plaintiff ventures well beyond those provisions in asking for a permanent injunction and, for this reason alone, Plaintiff's motion should be denied.

### b. Plaintiff has not established its right to permanent injunctive relief in aid of execution on its judgment

Plaintiff's motion for a permanent injunction fails for other reasons that go to the heart of the nature of injunctive relief.

■ To begin, it is a well-settled principle that injunctions are inherently equitable in nature and "equitable relief is available only in the absence of an adequate remedy at law." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.,* 243 Fed.Appx. 502, 503 (11th Cir. 2007); *see also Mitsubishi,* 14 F.3d at 1518 (stating this principle in the context of constructive trusts). Plaintiff has available to it here numerous more-than-adequate remedies at law to collect on its judgment, and each of those remedies fall under the umbrella of Rule 69(a). *See, e.g.,* Fla. Stat. §§ 56.011 *et. seq.*; Fla. Stat. §§ 76.01 *et. seq.*; Fla. Stat. §§ 77.01 *et. seq.*; *Barbouti v. Lysandrou,* 559 So.2d 648, 650 (Fla. 3rd DCA 1990) (pre-judgment temporary injunction restraining defendant from removing money from bank not proper where the legal remedy of garnishment was available to plaintiff). A quick look at the Court's docket confirms that Plaintiff has actively pursued its remedies under Rule 69.[11] The fact that Plaintiff has not successfully collected the full judgment does not mean that Plaintiff has

---

**10.** Citing the Supreme Court's decision in *De Beers Consolidated Mines v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), the Court stated: "The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Dixie Carriers,* 843 F.2d at 824.

**11.** Since entry of judgment, Plaintiff has executed on Sidi's personal possessions, including two automobiles, and has actively pursued several writs of garnishment. *See, e.g.,* DE 105, 123, 137, 178, 182.

no remedy at law. "The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another." *SME Racks, Inc.*, 243 Fed.Appx. at 503–04.

Not long ago the Eleventh Circuit Court of Appeals provided an overview of this court's power to enter an injunction:

> First, any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. There is no such thing as a suit for a traditional injunction in the abstract.... An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise. However, because it is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue. Thus, to obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint, (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief.

*Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127–28 (11th Cir. 2005) (internal quotation marks and citations omitted).

Plaintiff here claims the right to an injunction "in the abstract." Plaintiff has not made a showing that Sidi, by having an outstanding unsatisfied judgment, has infringed an independent legal right of Plaintiff. And, as already noted, Plaintiff has not established that it is without an adequate remedy at law. Moreover, Plaintiff has not demonstrated irreparable harm, as that term is used in the context of injunctions.

> Irreparable injury must be neither remote nor speculative, but actual and imminent. Moreover, if any injury can be undone through monetary remedies, it is not irreparable. The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.... [P]rospective harm, by itself, clearly does not meet the test of imminence.

*SME Racks, Inc.*, 243 Fed.Appx. at 504 (internal citations and quotation marks omitted).

Plaintiff's injury can be repaired though monetary remedies—that is through future successful collection efforts. The Court can not overlook the fact that its judgment was entered only this year, and Plaintiff has a number of years to collect on that judgment. Thus, there is the very real possibility that compensatory relief will become available to Plaintiff at a later date.[12] Under these circumstances, Plain-

---

**12.** Conversely, the possibility that Plaintiff may never collect on its judgment does not make out irreparable harm: "That sort of statement can be made by virtually every person who sues another for money damages. Its very ubiquity indicates why it cannot conceivably be enough to justify the issuance of a prejudgment injunction of this nature." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir.2004)(uphold-

tiff falls very short of demonstrating that it will suffer irreparable harm if Sidi is not permanently enjoined from exercising his stock options.[13]

This Court has taken great care to consider Plaintiff's request for a permanent injunction and wants to make plain that it is sympathetic to Plaintiff's obvious frustration in not being able, to date, to collect on its considerable judgment. Plaintiff's collection efforts have been "substantial, in terms of money, time and energy." *SME Racks, Inc.*, 243 Fed.Appx. at 504. The difficulty Plaintiff is experiencing, however, does not empower this Court, under these circumstances, to grant it the relief it seeks here.[14] For these reasons, Plaintiff's motion should be denied.

### c. The All Writs Act does not authorize the relief Plaintiff seeks

Finally, this Court will briefly address Plaintiff's invocation of the All Writs Act, 28 U.S.C. § 1651(a), as authority for the injunction Plaintiff seeks. [*See* DE 230, ¶ 11].

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Thus, it empowers courts to issue orders "necessary to the preservation or exercise of its subject matter jurisdiction." *ITT Community Dev.*, 569 F.2d at 1359. Conversely, "[c]onduct not shown to be detrimental to the court's jurisdiction or exercise thereof cannot be enjoined under the Act." *Mitsubishi*, 14 F.3d at 1518 n. 17. The Act does not give courts the authority to order injunctive relief "beyond that traditionally exercised by courts of equity." *Rosen*, 21 F.3d at 1528 n. 15 (citing *De Beers*, 325 U.S. at 218–19, 65 S.Ct. 1130).

This Court will continue to have jurisdiction over proceedings in aid of execution on the judgment it entered; the permanent injunction sought by Plaintiff is in no way necessary to preserve that jurisdiction. Therefore, the All Writs Act does not empower this Court to grant the relief Plaintiff seeks. *See Rosen*, 21 F.3d at 1528 n. 15; *Mitsubishi*, 14 F.3d at 1518 n.

---

ing trial court's refusal to issue pre-judgment injunction freezing defendant's assets).

**13.** It is all the more difficult for Plaintiff to demonstrate irreparable harm given the nature of injunctive relief sought by Plaintiff—restraining Sidi from exercising his stock options without court approval—as that injunction, if granted, would not put any money in Plaintiff's pocket.

**14.** Plaintiff makes one other argument—that the peculiar nature of stock options justifies an injunction, and cites *Schiller v. Miller*, 621 So.2d 481 (Fla. 4th DCA 1993), for the proposition that this Court "may properly restrain a party from disposing of property where the property is unique or otherwise peculiar." [DE 230, ¶ 11]. Plaintiff's citation of *Schiller* misleading, as the court actually wrote this: "We recognize that injunctions may not be granted for the retention of personal property unless it is found to be unique or otherwise

peculiar, *and unless the plaintiff demonstrates that there is no adequate remedy at law.*" 621 So.2d at 482 (emphasis added). The appellate court in *Schiller* concluded that the trial court did not abuse its discretion in temporarily restraining a defendant from disposing of four items of jewelry where the record showed that "the actual present market value of the aforementioned four pieces of jewelry is difficult to ascertain as they are all unique one of a kind creations...." *Id.* A dissent, which this Court considers far more persuasive, concluded that money damages could compensate plaintiff for the jewelry if it were sold, and that the injunction was improperly entered. *Id.* at 483 (Farmer, J., dissenting). In any event, as already discussed, Plaintiff here has an adequate remedy at law that precludes this Court from permanently enjoining Sidi from exercising his stock options.

17; *ITT Community Dev.*, 569 F.2d at 1358–1360.

### 3. Recommendation

For the foregoing reasons the undersigned

RECOMMENDS that Plaintiff Myland Enterprise's Emergency Motion for a Permanent Injunction and/or Restraining Order Against Defendant Roberto Edmundo Sidi, [DE 215, 230], be **DENIED.**

The parties may file written objections to this Report and Recommendation with the Honorable Patricia A. Seitz **no later than December 18, 2007.** Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger*, 847 F.2d 745, 749–50 (11th Cir.1988).

RESPECTFULLY SUBMITTED at Miami, Florida this 27th day of November, 2007.